JUDGE BUCHWALD  14 CV 0581 

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff,*

v.

LAWRENCE E. PENN, III,
MICHAEL ST. ALTURA EWERS,
CAMELOT ACQUISITIONS SECONDARY
OPPORTUNITIES MANAGEMENT, LLC,
THE CAMELOT GROUP INTERNATIONAL,
LLC, and
SSECURION LLC,

*Defendants,*

- AND -

A BIGHOUSE PHOTOGRAPHY AND FILM
STUDIO LLC,

*Relief Defendant.*

14 Civ ____
ECF Case

## DECLARATION OF HOWARD A. FISCHER PURSUANT TO LOCAL RULE 6.1 IN SUPPORT OF PLAINTIFF'S EMERGENCY APPLICATION FOR AN ORDER TO SHOW CAUSE, TEMPORARY RESTRAINING ORDER AND OTHER RELIEF

I, Howard Fischer, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a member of the bar of the State of New York and of the bar of this Court. I am employed as a Senior Trial Counsel in the Enforcement Division in the New York Regional Office of the Securities and Exchange Commission (the "Commission").

2. I submit this Declaration pursuant to Local Civil Rule 6.1(d) and in support of the Commission's emergency application (the "Application") for an Order directing Defendants Lawrence E. Penn, III ("Penn"), Michael St. Altura Ewers ("Ewers"), Camelot

Acquisitions Secondary Opportunities Management, LLC ("CASO Management LLC"), The Camelot Group International, LLC ("CGI"), Ssecurion LLC ("Ssecurion") (collectively "Defendants"), and Relief Defendant A Bighouse Photography and Film Studio LLC ("Big House" or "Relief Defendant") to show cause why an order should not be entered freezing Defendants' assets, freezing Relief Defendant's assets up to the amount of potential ill-gotten gains, granting a temporary restraining order, ordering preliminary injunctions against securities laws violations, ordering Defendants and Relief Defendant to repatriate any investor funds held overseas and freezing all such repatriated funds, ordering Defendants and Relief Defendant to provide verified accountings, prohibiting the destruction, alteration or concealment of documents, and permitting the Commission to take expedited discovery.

3. No previous application for similar relief has been made.

4. In addition to personal knowledge, I base this declaration upon the concurrently-filed declarations of Commission staff members Karen E. Willenken, Esq., James R. D'Avino, and Jennifer Klein, additional discussions with other Commission staff members, and my review of pertinent documents obtained by the Commission in the course of its investigation.

5. As set forth herein, the Commission is proceeding by Order to Show Cause rather than by Notice of Motion because Defendants have been operating a fraudulent investment scheme since at least 2010, and, as part of that scheme, appear to have misappropriated millions of dollars of investor funds.

### A. Defendants' Fraudulent Scheme

6. Since at least September 2010, Defendants Penn, CASO Management and CGI appear to have raised more than $120 million from investors for investment in private equity fund Camelot LP (the "Fund").

7. In breach of their fiduciary duties, Penn and CASO Management engaged in a fraudulent scheme to misappropriate fund assets, disadvantaging investors and elevating Penn's and CASO Management's interest above the interests of the fund they advised. Ewers, Ssecurion, and CGI aided and abetted this fraudulent scheme.

8. Penn and CASO Management, a registered investment adviser under Penn's control, aided and abetted by Ewers, Ssecurion, and CGI, engaged in a fraudulent scheme to misappropriate approximately $9.3 million from a private equity fund Penn and CASO Management controlled in order to provide additional assets to Penn to spend on his business and personal expenditures. Penn diverted $9.3 million from the fund during a period when CASO Management had precluded investors in the fund from redeeming their interests. Penn and CASO Management misappropriated the moneys by directing the fund to pay purported "due diligence" expenses from March 2010 through October 2013 to Ssecurion, an entity run by their confederate in the scheme, Ewers.

9. Ssecurion was not a bona fide company and provided little to no due diligence services to the fund. Instead, Ssecurion acted as a front for Penn to siphon money from the fund and route it back to CASO Management or to CGI, an unregistered entity adviser under Penn's control. Ssecurion routed almost all of the almost $9.3 million it received back to CASO Management or to CGI, in some cases interposing another Ewers-owned entity, Big House, as an intermediary in the round-trip transactions.

10. Once the money was diverted from the fund, it was commingled with management fees that were paid by the fund to CASO Management, and forwarded on to CGI. CGI used the commingled funds to pay overhead expenses, such as rent and salary, which were not permissible fund expenses under the fund's governing document, the Amended and Restated Limited Partnership Agreement of Camelot Acquisitions Secondary Opportunities, L.P., dated February 5, 2010, and as amended December 27, 2011 (the "LPA"). CGI also used the commingled funds to market the fund, to pay "finders" who brought in the fund's investors, and to establish a global presence for CGI. The sham payments of approximately $9.3 million allowed Penn to spend far more on these types of expenses than the fund's investors had anticipated or authorized, renting luxurious office space and otherwise presenting an image of a fully operational international business.

**B.     Defendants Pose a Continuing Risk to the Investing Public**

11. Currently, the general partner of the Fund, responsible for all investment decisions is Camelot Acquisitions Secondary Opportunities G.P. Defendant Penn is the managing member of the general partner. Penn also is the only person authorized to manage the Fund's bank account.

12. Based on documents reviewed by the staff, as of October 31, 2013, the Fund's bank account contained approximately $780,000. As of January 28, 2014, according to a representative of the bank, it contained approximately $18,000.

13. Absent an asset freeze and repatriation order, Defendants may further dissipate any existing funds or hide them in overseas accounts.

14. Beginning in April 2013, Penn established a new investment adviser, Excalibur Management LLC.

15. Based on documents reviewed by the staff, it appears that Camelot Group International received $1 million from two individuals in July 2013, and that it transferred these funds to an account in the name of TCGI Capital LLC. Recent information from the bank indicates that an account in the name of TCGI Capital LLC has a balance of $2 million.

16. There is a substantial risk that, absent the emergency relief sought herein, Defendants may continue their illegal conduct and defraud new investors.

### C. The Commission Has Attempted To Provide Notice of This Application to Defendants and Relief Defendant

17. On January 30, 2014, between approximately 10:30 a.m. and 11:30 a.m., I contacted or attempted to notify each defendant and relief defendant as described further below:

   a. We contacted an attorney for Defendant Penn (who appears to be the Managing Member or Managing Director of Defendants CASO Management and CGI), Martha Stolley, at her business telephone number, (212) 309-6858, and notified her of this emergency application and the relief sought by the Commission.

   b. We attempted to reach Defendant Ewers (who appears to be the President and/or CEO of Defendant Ssecurion and of Relief Defendant Big House) by telephone at (415) 867-9297. When he did not answer, we left a voicemail providing notice of this emergency application and the relief sought by the Commission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2014
New York, New York

_____
Howard A. Fischer

5