USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/21/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
SECURITIES AND EXCHANGE :
COMMISSION, :
 :
                              Plaintiff, : 14-CV-0581 (VEC)
 :
         -against- : **MEMORANDUM**
 : **OPINION & ORDER**
LAWRENCE E. PENN, III, ET AL., :
 :
                            Defendants, :
 :
         -and- :
 :
A BIG HOUSE FILM AND PHOTOGRAPHY :
STUDIO, LLC, :
 :
                        Relief Defendant. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      The Securities and Exchange Commission ("SEC") filed this action against Defendant Lawrence E. Penn, III ("Penn") alleging that Penn misappropriated approximately $9 million from a hedge fund he managed. The SEC alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5; and Sections 204, 206(1), 206(2), and 207 of the Investment Advisers Act of 1940 (the "40 Act"), 15 U.S.C. §§ 80b-4, 80b-6(1), 80b-6(2), and 80b-7, and Rule 204-2 thereunder, 17 C.F.R. §§ 275.204-2. Penn pled guilty in New York state court to one count of grand larceny and one count of falsifying business records after being charged criminally in connection with the same scheme as underlies the SEC's complaint. Penn has asserted various common law torts and a violation of 42 U.S.C. § 1983 as counterclaims against the SEC.

1

Before the Court is the SEC's motion for judgment on the pleadings with respect to its claims under Section 10(b), Rule 10b-5 of the Exchange Act and Sections 204, 206(1), 206(2) and Rule 204-2 of the 40 Act. In the alternative, the SEC moves for partial summary judgment on each of these claims except those under Section 204 and Rule 204-2 of the 40 Act. The SEC also moves to dismiss Penn's counterclaims.

For the reasons set forth below, the Court converts the SEC's motion for judgment on the pleadings to a motion for summary judgment and GRANTS that motion in its entirety. The Court further DISMISSES Penn's counterclaims without prejudice. The SEC's remaining claim under Section 207 of the 40 Act is unresolved by this Opinion.

## BACKGROUND[1]

**1.     The SEC Complaint and Related State Criminal Proceedings**

From its inception in 2007 to approximately February 2014, Penn managed a private equity fund called Camelot Acquisitions Secondary Opportunities LP (the "Fund"). Willenken Dec. Ex. E at 1. According to the SEC's Complaint, Penn misappropriated over $9 million from the Fund through a series of purported "due diligence" payments to an entity called Ssecurion LLC ("Ssecurion") that was controlled by Penn's co-conspirator. Compl. (Dkt. 151-1) at ¶ 2. Monies paid to Ssecurion were transferred to Penn and used for his personal and business

---

[1] The Court's account of the record is based on the uncontroverted facts in the SEC's Rule 56.1 Statement ("Pl. 56.1 Stmt.") (Dkt. 152) and the supporting declaration filed by Karen E. Willenken ("Willenken Dec.") (Dkt. 151). Penn was informed by the SEC of his opportunity to submit a Rule 56.1 Statement, and he chose not to do so. Penn did file an amended answer, in which he disputes some, though not all, of the SEC's allegations. Dkt. 129. As the SEC notes, many of Penn's denials are facially incredible. Nonetheless, recognizing that Penn is proceeding *pro se*, the Court looks only to the uncontroverted and admitted allegations in the SEC's Rule 56.1 Statement. Where the Court can find no genuine objection by Penn and no contradiction in the record, it relies on the SEC's submissions. *See* S.D.N.Y. Local Rule 56.1(c) ("[M]aterial facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *Smith v. City of New York*, No. 12-CV-4892 (JPO), 2014 WL 5324323, at *1 n.1 (S.D.N.Y. Oct. 20, 2014) (granting summary judgment against a pro se litigant where the court's independent review of the record did not contradict the moving party's Rule 56.1 statement).

expenses. Compl. ¶¶ 2, 4. Based on the same facts as underlie the SEC's Complaint, Penn was indicted in state court for grand larceny, money laundering, and falsifying business records. Pl. 56.1 Stmt. ¶ 3. Given the substantial overlap between the legal and factual issues in the SEC's civil case and the state criminal case, on June 11, 2014, the Court granted the SEC's motion to stay all discovery pending the outcome of Penn's criminal case. Dkt. 51. On March 16, 2015, Penn pled guilty to one count of grand larceny in the first degree and one count of falsifying business records in the first degree.[2] Pl. 56.1 Stmt. ¶ 6.

**2.     The Amended Answer and Allocution**

As a part of his guilty plea allocution, Penn admitted that he made a false entry in a schedule of invoices in the Fund's business records "with the intent to defraud, including an intent to commit another crime[.]" Pl. 56.1 Stmt. ¶ 9; Willenken Dec. Ex. G (plea allocution) at 7:2-12. Penn also admitted that he stole in excess of $1 million from the Fund. Pl. 56.1 Stmt. ¶ 8.c; Willenken Dec. Ex. G at 6:18-7:1.

In addition to those admissions, Penn filed an amended answer to the SEC's Complaint. Dkt. 129. In his amended answer, Penn admitted that he "sent" $9.3 million from the Fund to two Penn-controlled entities, Camelot Acquisitions Secondary Opportunities Management LLC ("CASO Management") and Camelot Group International LLC ("CGI"), and that he did so through Ssecurion. Pl. 56.1 Stmt. ¶ 18 (citing Am. Answer ¶ 3, 3d Aff. Def.). According to Penn, CGI used the money to pay overhead expenses including rent and salary. *Id.* ¶ 19 (citing Am. Answer ¶¶ 3-4). Penn also admits mischaracterizing the use of Fund money, *id.* ¶ 20 (citing Am. Answer ¶ 2), and he forthrightly admits liability for violations of Section 204 of the 40 Act and Rule 204-2 thereunder, *id.* ¶ 22 (citing Am. Answer ¶ 6).

---

[2]     Despite his guilty plea, Penn appealed his conviction. Penn's appeal remains pending. *See People v. Penn*, 2016 NY Slip Op 74993(U), 2016 WL 3045475 (1st Dep't 2016); Def. Opp. (Dkt. 161) at 3.

But Penn has responded imprecisely and ambiguously to other facts regarding the details of the scheme alleged in the Complaint, particularly allegations related to the connection between Penn's scheme and the misstatements in the Fund's records. For example, Penn denies knowledge or information sufficient to form a belief as to the truth of "some of the allegations in Paragraph 29 of the Complaint." Am. Answer ¶ 29. It is in that paragraph that the SEC alleges that the transfers to Ssecurion were characterized as "due diligence" payments and that the purported due diligence payments from 2010 through October 2013 total almost $9.3 million—the same amount Penn admits he "diverted." *Compare* Comp. ¶ 29, *and* Am. Answer ¶ 3, 3d Aff. Def. Penn also denied knowledge adequate to form a belief as to some, but not all, of the SEC's allegations that the Ssecurion invoices for "due diligence" expenses were included in the Fund's records—the same records Penn admits were inaccurate in some unspecified way—and that he created purported work product to correspond to those invoices in response to an investigation by the Fund's auditors.[3] *Compare* Compl. ¶¶ 5, 30, 37 *and* Am. Answer ¶¶ 5, 30, 37. These ambiguous denials do not comply with the minimum requirements under Rule 8, even accounting for Penn's *pro se* status, because Penn denied knowledge adequate to form a belief only as to *some* of the SEC's allegations.[4] By failing to specify what portions of the SEC's allegations were beyond his knowledge and by failing to specifically deny the allegations that

---

[3] Penn's guilty plea allocution does not include details as to the nature of the false entries he admitted to making in the Fund's business records. The SEC's motion implicitly assumes that the false entries to which Penn admitted are the false entries relating to "due diligence" payments to Ssecurion. Penn has not contested that assumption or argued that he admitted to falsifying some other, unrelated entries in the Fund's business records, and he has admitted that the transfers through Ssecurion were in fact mischaracterized. Am. Answer ¶¶ 2-4. As explained above, the Court finds that he has effectively admitted that the false entries in the Fund's records are the same as the false records reflecting "due diligence" payments to Ssecurion. Am. Answer ¶¶ 5, 30, 37.

[4] Penn's admissions are similarly oddly worded. Specifically, Penn frequently answers with the phrase: "Defendant admits knowledge or information sufficient to form a belief as to the truth of the allegations in" particular paragraphs of the Complaint. *See*, *e.g.*, Am. Answer ¶¶ 20, 22. The Court understands that answer to constitute an admission of the allegation.

4

were within his knowledge, Penn has left the Court guessing. Given the inappropriate and ambiguous nature of these responses, the Court deems the SEC's allegations in paragraphs 5, 29, 30, and 37 of the Complaint to have been admitted. *See* Fed. R. Civ. P. 8(b); *Dawkins v. Williams*, 511 F. Supp. 2d 248, 270-71 (N.D.N.Y. 2007) (deeming admitted allegations which defendant improperly denied in his answer).

3. **The Instant Motion**

The SEC's motion is based on Penn's admissions in his guilty plea allocution and in his amended answer. Because many of Penn's responses do not comply with the basic requirements of Rule 8(b), the SEC contends that the Complaint is essentially uncontroverted with respect to its Exchange Act and 40 Act claims, with the exception of its claim pursuant to Section 207 of the 40 Act. Pl.'s Mem. (Dkt. 150) at 2. Alternatively, the SEC argues that it is entitled to summary judgment on its fraud claims under the Exchange Act and Section 206 of the 40 Act because Penn is collaterally estopped from relitigating the facts of the scheme to which he pled guilty in state court. *Id.* at 26-28. Finally, the SEC seeks dismissal of Penn's counterclaims as improperly consolidated with its enforcement action. *Id.* at 28-29.

In connection with its motion, the SEC served on Penn a Notice to Pro Se Litigant in the form provided by Local Rule 12.1. Dkts. 153, 154. The SEC's notice alerted Penn to the possibility that the Court would treat the SEC's motion as a motion for summary judgment and that he was required by Rule 56(e) to provide admissible evidence to counter the SEC's submissions. *See* Dkt. 154 at ¶¶ 2-3. This constituted sufficient notice that the SEC's motion for judgment on the pleadings might be converted to a motion for summary judgment.[5] *See*

---

[5] The SEC also provided adequate notice to Penn by moving for summary judgment in the alternative and sending Penn a Local Rule 56.2 Notice, informing him of his obligation to respond to the SEC's Rule 56.1 Statement with a statement, affidavits or other evidence of his own. *See* Dkts. 153, 155; *see also Nat. Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 911 (2d Cir. 1988) (noting that moving to dismiss or, in the

*Loccenitt v. City of New York*, No. 10-CV-8319 (JPO), 2012 WL 5278553, at *3 (S.D.N.Y. Oct. 22, 2012) (holding that a Local Rule 12.1 Notice to Pro Se Litigant provides adequate notice of potential conversion to a motion for summary judgment).

## DISCUSSION

**1.      Summary Judgment Conversion and Standard**

Because the SEC has presented matters outside the pleadings and properly noticed Penn, the Court converts its motion for judgment on the pleadings to one for summary judgment. *See Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." (quoting Fed. R. Civ. P. 12(d)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The Court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Pandora Media, Inc. v. Am. Soc'y of Composers, Authors and Publishers*, 785 F.3d 73, 77 (2d Cir. 2015) (*per curiam*) (quoting *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)).  Nevertheless, "to defeat summary judgment, 'a nonmoving party must offer some hard evidence showing that its version of the events is not

---

alternative, for summary judgment, provides adequate notice that the motion will be converted to one for summary judgment). Therefore, Penn had ample notice of the risk that the SEC's motion would be treated as a motion for summary judgment.

wholly fanciful.'" *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 197 n.10 (2d Cir. 2014) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)).

When a party moves for summary judgment against a *pro se* litigant, courts afford the non-moving party "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). District courts must read a *pro se* litigant's "pleadings liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks and citations omitted). Courts "are less demanding of [*pro se*] litigants generally, particularly where motions for summary judgment are concerned." *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). This lower standard for pro se litigants does not, however, "relieve [the *pro se* litigant] of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen*, 351 F.3d at 50 (quotation marks and citations omitted).

### 2.    Effect of Penn's Statements in his Allocution and Amended Answer

Penn is collaterally estopped from challenging the facts underlying his criminal convictions. State law determines the preclusive effect of Penn's convictions. 28 U.S.C. § 1738; *see Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985) ("The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute . . . . This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). Under New York law, a conviction— whether based on a trial or a guilty plea— is "conclusive proof of the underlying facts upon which it rests and the defendant is estopped from relitigating those facts in any future proceeding." *In re Cumberland Pharmacy, Inc. v. Blum*, 415 N.Y.S.2d 898 (2d Dep't 1979) (citing *S.T. Grand, Inc.*

*v. City of New York*, 32 N.Y.2d 300, 304-305 (1973)); *see Hooks v. Middlebrooks*, 472 N.Y.S.2d 54 (4th Dep't 1984) (no distinction for purposes of collateral estoppel between guilty plea and conviction at trial). The fact that Penn has an appeal pending from his criminal convictions does not affect the collateral estoppel analysis. *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (citing *In re Amica Mut. Ins. Co.*, 445 N.Y.S.2d 820 (2d Dep't 1981) ("The rule in New York, unlike that in other jurisdictions, is that the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding" (collecting cases)).

In determining what facts underlie a guilty plea, Courts in this district look at the facts the defendant admitted during his plea allocution. *See Kaplan v. S.A.C. Capital Advisors, L.P.*, 104 F. Supp. 3d 384, 389 (S.D.N.Y. 2015) ("When a defendant pleads guilty and allocutes to criminal conduct, it is only that specific conduct which the guilty plea incorporates.") (collecting cases).[6] Nevertheless, as a part of his plea allocation, Penn admitted that he made a false entry of "210 or 211 Schedule Invoices" in the business records of the Fund and did so with "intent to defraud, including an intent to commit another crime[.]" Pl. 56.1 Stmt. ¶ 9; Willenken Dec. Ex. G at 7:2-12. Penn also admitted that he "stole property from [the Fund], and that the value of the

---

[6] The Court notes that New York law does not clearly reach this conclusion. Although the contents of a plea allocution are certainly considered for the purposes of collateral estoppel, *see Buggie v. Cutler*, 636 N.Y.S.2d 357 (2d Dep't 1995), New York courts have not addressed whether other facts may also be viewed as underlying a guilty plea. *See Merchants Mut. Ins., Co. v Arzillo*, 472 N.Y.S.2d 97 (2d Dep't 1984) (collecting a number of cases for the proposition that "a guilty plea precludes relitigation in a subsequent civil action of all issues necessarily determined by the conviction," without further explication). Although the SEC looks in part to the Statement of Facts contained in Penn's indictment (Pl. Mem. at 27), the Court declines to do so in light of persuasive authority from this district. *See Kaplan*, 104 F. Supp. 3d at 389-90 ("[A]n indictment is simply an allegation—a charge by the Government," and is therefore not incorporated into a guilty plea.).

property exceeded $1 million." Pl. 56.1 Stmt. ¶ 8.c; Willenken Dec. Ex. G at 6:18-7:1. These facts form the basis of Penn's guilty plea, and Penn is precluded from relitigating them.[7]

Penn is also bound by the admissions in his amended answer. *Gibbs ex rel. Gibbs v. Cigna Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation."); *see also Bank of Am., N.A. v. Farley*, No. 00-CV-9346 (DC), 2002 WL 5586, at *6 (S.D.N.Y. Jan. 2, 2002) (treating defendant's initial answer as conclusive at summary judgment). Thus, Penn has admitted that he diverted $9.3 million from the Fund to other entities under his control via Ssecurion and used that money to pay rent and salary expenses, and that those transfers/payments were not appropriately characterized in the books and records of the Fund. Pl. 56.1 Stmt. ¶¶ 13-14, 18-20 (citing Am. Answer ¶¶ 2-6; 3d Aff. Def.). Penn has also admitted that the false entries in the Fund's business records related to invoices from Ssecurion. Pl. 56.1 Stmt. ¶ 9; Answer ¶¶ 5, 30, 37. Furthermore, Penn has also admitted that he violated Section 204 of the 40 Act and Rule 204-2 thereunder. Pl. 56.1 Stmt. ¶ 22; Am. Answer ¶ 6.

### 3. Liability

These facts, admitted by Penn in his amended answer and plea allocution, establish that there are no material questions of fact and that the SEC is entitled to summary judgment on its claims pursuant to the Exchange Act and Sections 204, 206(1), 206(2) and Rule 204-2 of the 40 Act. *See SEC v. Amerindo Inv. Advisors, Inc.*, No. 05-CV-5231 (RJS), 2013 WL 1385013, at*4-9 (S.D.N.Y. Mar. 11, 2013) (using collateral estoppel as to certain elements and demonstrating

---

[7] The SEC's use of collateral estoppel in this case has been hampered by the fact that the presiding judge who took Penn's guilty plea allowed him to simply confirm that the charge, as stated in the indictment, was true. *See* Willenken Dec. Ex. G at 6-7 ("[The Court:] count one . . . allege[s] that you . . . stole property from Camelot Acquisitions Secondary Opportunities LLP, and the value of the property exceeded $1 million, is that a true statement, sir? [Penn:] Yes, your Honor."). Ideally, the defendant should provide a factual recitation of what he did that makes him guilty as part of any guilty plea.

that there is no genuine dispute of material fact as to other elements to resolve a motion for summary judgment).

### A. Exchange Act Section 10(b) and Rule 10b-5

Section 10(b) of the Exchange Act provides that "[i]t shall be unlawful for any person … to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe . . . ." 15 U.S.C. § 78j(b). Rule 10b-5 provides, in relevant part, as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or the mails or of any facility of any national securities exchange,
>
> (a)  To employ any device, scheme, or artifice to defraud, [or]
> (b) . . .
> (c)  To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To make out a claim under sections (a) and (c) of Rule 10b-5, the SEC must prove that the defendant, in connection with the purchase or sale of a security, (1) engaged in a manipulative or deceptive act, (2) in furtherance of an alleged scheme to defraud, and (3) acted with scienter. *SEC v. Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196, 201 (S.D.N.Y. 2008) (quoting *In re Global Crossing, Ltd., Sec. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004) (citing *SEC v. U.S. Envtl., Inc.*, 155 F.3d 107, 112 (2d Cir.1998))). Unlike a private plaintiff, the SEC need not prove reliance. *See SEC v. North Am. Research & Dev. Corp.*, 424 F.2d 63, 84 (2d Cir. 1970) ("reliance is immaterial because it is not an element of fraudulent representation under Rule 10b-5 in the context of an SEC proceeding . . .").

With respect to the first element, the SEC needs to show that what occurred was an "inherently deceptive act" and not just a misleading statement. *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (distinguishing misstatement and "scheme" liability). Conduct that is deceptive only because of a subsequent material misstatement may be actionable under Section 10b-5(b) but cannot be shoehorned into a claim for scheme liability under Section 10b-5(a) and (c). *SEC v. Garber*, 959 F. Supp. 2d 374, 381 & n.47 (S.D.N.Y. 2013) (explaining that *Kelly* did not involve "scheme liability" because the conduct was only deceptive by virtue of subsequent misrepresentations); *but see In re John P. Flattery & James D. Hopkins*, SEC Release No. 3981, at *14 (Dec. 15, 2014) (rejecting *Kelly* and suggesting that misstatements are actionable under subsection (a) and (c) of Rule 10b-5), *vacated by SEC v. Kelly*, 810 F.3d 1 (1st Cir. 2015)). With respect to the third element, scienter requires proof that the defendant acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976).

Penn admitted that he diverted $9.3 million from the Fund to other entities under his control. Pl. 56.1 Stmt. ¶¶ 18-20; Am. Answer ¶¶ 2-4, 3d Aff. Def. He admits the money was diverted through Ssecurion and that he falsified a schedule of invoices from Ssecurion in the Fund's records. Pl. 56.1 Stmt. ¶ 9, 18; Am. Answer ¶¶ 5, 30, 37. He also admits that he "stole" over $1 million from the Fund through this scheme, implicitly acknowledging that he took property that he knew did not belong to him. Pl. 56.1 Stmt. ¶ 8; Willenken Dec. Ex. G at 6:18-7:1. By disguising the ultimate recipient of the funds through sham transactions, Penn engaged in an inherently deceptive act. Routing the money to CASO Management and CGI through Ssecurion served no legitimate purpose and was an obvious attempt to shield Penn's theft from the Fund's auditors and participants. *See SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010);

*see also SEC v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 384 (S.D.N.Y. 2010) (transferring shares through an intermediary is inherently deceptive); *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012) (finding that creation and use of an intermediary entity to conceal the identity of a transaction's beneficiary is inherently deceptive). These deceptive acts are sufficient to establish the first element of liability under Rule 10b-5(a) and (c). There does not appear to be any dispute that these acts were in furtherance of Penn's fraudulent scheme, satisfying the second element of liability. And, finally, Penn's admissions satisfy Rule 10b-5's scienter requirement. Penn admitted in his allocution to stealing more than $1 million from the Fund, Pl. 56.1 Stmt. ¶ 8; Willenken Dec. Ex. G at 6:18-7:1, and to falsifying a schedule of invoices in the Fund's records "with the intent to defraud, including an intent to commit another crime and to aid and conceal the commission thereof[,]" Pl. 56.1 Stmt. ¶ 9; Willenken Dec. Ex. G at 7:2-12.

Because Penn's admissions in his amended answer and during his state guilty pleas are sufficient to establish liability under Section 10(b) and Rule 10b-5, there is no genuine dispute of material fact with respect to these claims.[8]

B. <u>Sections 206(1) and 206(2) of the 40 Act</u>

Section 206(1) and 206(2) of the 40 Act set "'federal fiduciary standards' to govern the conduct of investment advisers" and impose "enforceable fiduciary obligations" on those advisers. *Transamerica Mortg. Advisors, Inc. v. Lewis* (*TAMA*), 444 U.S. 11, 17 (1979) (quoting

---

[8] Although the Court need not reach Penn's factual arguments with respect to materiality and scienter, they are unavailing. Penn now argues that the investors and partners in his fund fully expected him to extract management fees, and that therefore his conduct was neither material nor deliberately misleading because it was consistent with investor and partnership expectations. Def. Opp. at 16-19, 20. These arguments are particularly untenable in light of the fact that his Fund has brought a civil suit against him in New York Supreme Court for, *inter alia*, breach of fiduciary duty, fraud, and conversion, Pl. 56.1 Stmt. ¶ 56; Willenken Dec. Ex. K, and his admission, under oath, that he stole money from the Fund, Willenken Dec. Ex. G at 6:18-7:1, 7:2-12.

*Santa Fe Indus. v. Green*, 430 U.S. 462, 471 n.11 (1977)).  An investment adviser has a duty to subordinate its own interests to those of fund investors.  *See SEC v. Moran*, 922 F. Supp. 867, 8996 (S.D.N.Y. 1996).  In particular, an investment adviser is prohibited from using a "device, scheme, or artifice to defraud" clients, 15 U.S.C. § 80b–6(1), or from conducting a "transaction, practice, or course of business which operates as a fraud or deceit upon any client," *id*. at §80b–6(2).  Section 206's bar on schemes and artifices to defraud also prohibits non-disclosure of material information by an investment adviser.  *See In re Reserve Fund Sec. and Derivative Litig.*, 09-CV-4346 (PGG), 2012 WL 12354233, at *2 (S.D.N.Y. Oct. 3, 2012) (holding that Section 206 prohibits material non-disclosure and citing *Moran*, 922 F. Supp. at 896); *SEC v. Bolla*, 401 F. Supp. 2d 43, 66-68 (D.D.C. 2005) (recognizing that in the context of a fiduciary relationship non-disclosure and misstatements can be a scheme or artifice to defraud and holding defendant liable on misstatement theory under Section 206(1)); *cf. SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 198 (1963) (Section 206 prohibits material nondisclosure because it is a "variety of fraud or deceit").

The elements of a claim under Section 206 are similar to the elements of a claim under Rule 10b-5, *see TAMA*, 444 U.S. at 25 n.1 (White, J. dissenting) ("The provisions of [Section 206] are substantially similar to § 10(b)"), and identical to a claim under Section 17(a) of the Securities Act, *see SEC v. Pimco Advisors Fund Mgmt., LLC*, 341 F. Supp. 2d 454, 470 (S.D.N.Y. 2004) ("The provisions of Sections 206(1) and 206(2) have been interpreted as substantively indistinguishable from Section 17(a) of the Securities Act, except that Section 206(1) requires proof of fraudulent intent, while Section 206(2) simply requires proof of negligence .").  Thus, "facts showing a violation of Sections 10(b) or 17(a) by an investment advisor will also support a showing of a Section 206 violation." *SEC v. Berger*, 244 F. Supp. 2d

180, 192 (S.D.N.Y. 2001) (citing *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363 n.4 (9th Cir. 1993)).

Penn's admitted scheme to defraud establishes each of the elements of a claim under Sections 206(1) and (2).  There is no dispute that Penn was acting as an investment adviser as defined by the 40 Act, and he has admitted to managing the Fund.  *See Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977) ("[P]ersons who manage[ ] the funds of others for compensation are 'investment advisers' within the meaning of the statute.").  Penn also admitted that he diverted $9.3 million from the Fund to pay business expenses through Ssecurion.  That scheme was inherently deceptive.  *See Lee*, 720 F. Supp. 2d at 334.  Penn's scheme also satisfies the scienter requirement as applied to Rule 206.  *See Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979), *aff'd on other grounds*, 450 U.S. 91 (1981) (assessing scienter for the purposes of the 40 Act under the same standard as a Section 17(a) claim); *See Moran*, 922 F. Supp. at 896 (applying Exchange Act scienter requirement to a 40 Act Section 206(1) claim).

Penn's failure to disclose his scheme to the Fund's participants and attempts to obscure the facts from the Fund's auditors are also actionable under Section 206.  Penn admitted that the Fund's records improperly characterized the use of the money paid to Ssecurion and, as a part of that scheme, he falsified a schedule of invoices in the Fund's records.  Pl. 56.1 Stmt. ¶¶ 8-9, 13-14, 18-20; Am. Answer ¶¶ 2-3, 5-6, 3d Aff. Def., 4th Aff. Def.; Willenken Dec. Ex. G at 6:18-7:12.  Penn's non-disclosure and outright misstatements breached his duties to the Fund.  *See In re Reserve Fund Sec. and Derivative Litig.*, 2012 WL 12354233, at *2.  Additionally, diversion and misappropriation of funds by an adviser are necessarily material.  *See Operating Local 649 Annuity Tr. Fund  v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 93 (2d Cir. 2010) ("[a]ny rational mutual fund investor would be highly leery of dealing with a fiduciary . . . who, in

violation of the law, lined [its] pockets at the expense of investors . . .").[9] Penn's scienter with respect to the misstatements is established by his admissions that he acted with "intent to defraud," Willenken Dec. Ex. G at 7:2-12, and "stole" over $1 million from the Fund, *id.* at 6:18-7:1; *see also Ernst*, 425 U.S. at 193 & n.12. The Court finds that there is no dispute of material fact, and Penn is liable under Sections 206(1) and 206(2) of the 40 Act.

### C. Section 204 and Rule 204-2 of the 40 Act

Penn's opposition papers contend—without argument—that the SEC is not entitled to judgment on these claims. Def. Opp. at 5. But, as discussed above, Penn's express admission of liability for violations of Section 204 and Rule 204-2 in his answer to the SEC's complaint is conclusive for purposes of summary judgment. Am. Answer ¶ 6; *see Gibbs ex rel. Gibbs*, 440 F.3d at 578. There is, therefore, no genuine dispute of material fact with respect to Penn's liability on these claims.

### 4.   **Penn's Counterclaims against the SEC**

Penn's counterclaims cannot be consolidated with the SEC's action for equitable relief because the SEC has not consented. 15 U.S.C. § 78u(g); *see SEC v. McCaskey*, 56 F. Supp. 2d 323, 325 (S.D.N.Y. 1999) ("[Section 21(g)] has routinely been employed to dismiss third-party complaints and counterclaims because such additional claims protract litigation." (internal citations omitted)); *SEC v. Better Life Club of Am., Inc.*, 995 F. Supp. 167, 180 (D.D.C. 1998). Penn's counterclaims must, therefore, be dismissed.

---

[9] The Court assumes, without deciding, that because Rule 206 borrows from Rule 10b-5, a Section 206 claim based on a misstatement or non-disclosure (rather than a scheme) requires evidence of materiality just as a misstatement must be material to be actionable under Rule 10b-5(b). *See Steadman*, 603 F.2d at 1130 (applying Exchange Act materiality standard under the 40 Act). Materiality is straightforward in this case as "any investor, without regard for the degree of sophistication, would find it material that invested funds were not used for their stated purpose." *SEC v. Morriss*, No. 12-CV-80 (CEJ), 2012 WL 6822346, at *11 (E.D. Mo. Sept. 21, 2012).

## CONCLUSION

For the forgoing reasons, Plaintiff's motion for summary judgment is GRANTED in its entirety, and Defendant's counterclaims are DISMISSED without prejudice. The SEC's claims under Section 207 of the 40 Act remain outstanding. The parties are ordered to notify the Court not later than **January 6, 2017**, whether either needs any discovery with respect to the SEC's Section 207 claim.

Because the parties did not provide any briefing on the appropriate remedies in this case, the Court directs the parties to submit briefs regarding this issue. The SEC's brief must be filed on or before **January 6, 2017**; Penn's response shall be filed on or before **January 27, 2017**; and the SEC's reply shall be filed on or before **February 6, 2017**.

**SO ORDERED.**

Date:  December 21, 2016                       _____
     New York, New York                          **VALERIE CAPRONI**
                                                       **United States District Judge**