USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/22/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,          14-CV-581 (VEC)

          -against-                     OPINION & ORDER

LAWRENCE E. PENN, III, ET AL.,

                             Defendants,

                 -and-

A BIG HOUSE FILM AND PHOTOGRAPHY
STUDIO, LLC,

                        Relief Defendant.
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      Defendant Lawrence E. Penn, III ("Penn") was charged in New York state court in 2014 with misappropriating approximately $9 million from an investment fund that he controlled. Penn pleaded guilty to one count of grand larceny and one count of falsifying business records. This is a parallel civil enforcement proceeding. The SEC alleges that Penn's scheme violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b); Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5; and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (the "40 Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2). On December 21, 2016, the Court granted the SEC's motion for summary judgment as to liability. Bifurcating the proceedings, the Court directed the parties to separately brief the SEC's remedies. The SEC has moved to permanently enjoin Penn from further violations of the securities laws; for disgorgement of the proceeds of his scheme; and for imposition of a civil

1

monetary penalty. For the reasons that follow, the Court GRANTS the SEC's motion to enjoin Penn from further violations of the securities laws and DENIES its motion for disgorgement and penalties because there is a material dispute of fact that requires an evidentiary hearing.

**BACKGROUND**

The facts of Penn's scheme and the history of these proceedings is set out more fully in the Court's Memorandum Opinion and Order granting the SEC's motion for summary judgment. *See* Opinion and Order dated Dec. 21, 2016 (Dkt. 168) ("Op."). In brief, from approximately 2007 to February 2014 Penn was the general partner of Camelot Acquisitions Secondary Opportunities, LP (the "Fund"), a private equity fund. Op. at 2. Between 2010 and 2013, Penn diverted $9,286,916.65 from the Fund through a series of fictitious invoices for "due diligence." Op. at 2. The invoices were from Ssecurion, LLC ("Ssecurion"), a company set up by Penn and an accomplice. Op. at 2. Ssecurion transferred the lion's share of the funds to other entities controlled by Penn, Camelot Acquisitions Secondary Opportunities Management, LLC and Camelot Group International, LLC. Op. at 3. According to the SEC – and not contested by Penn -- over the course of the scheme, the Fund made 80 transfers to Ssecurion in respect of 32 false invoices. *See* Declaration of James R. D'Avino ("D'Avino Decl.") (Dkt. 179) ¶¶ 10-13.

Penn was arrested by New York City authorities, and, on March 16, 2015, he pleaded guilty to one count of first degree grand larceny and one count of falsifying records in the first degree. Op. at 3. As a condition of his plea, Penn was ordered to make restitution in the amount of $8,362,973.89[1] and to forfeit his interest in the Fund, which primarily consisted of his right to "carried interest" or a percentage of the Fund's profits. *See* Opp'n (Dkt. 185) Exs. 2, 3.

---

[1] The discrepancy between the amount diverted by Penn ($9,286,916.65) and the state court's restitution order ($8,362,973.89) is based on that court's finding that approximately $1 million of the diverted funds were used for the benefit of the Fund.

Pursuant to the state court's order, Penn is required to pay a graduated amount of his annual gross income from 5% of any income below $20,000 to 25% of any income above $350,000 in restitution. Opp'n Ex. 2 ¶ 2. The parties dispute the value of Penn's forfeited interest in the Fund. According to an analysis submitted by Penn to the New York County District Attorney's office, as of July 31, 2014, Penn's carried interest in the Fund's profits was worth approximately $18.5 million. Opp'n Ex. 5. The SEC contends that this estimate is overly rosy, based on speculative and out-of-date assumptions about the Fund's performance, and does not account for provisions of the Fund's partnership agreement which required Penn to forfeit half his interest in the Fund upon being removed as the Fund's general partner. Reply Mem. (Dkt 188) at 7.

These proceedings were stayed pending resolution of Penn's criminal case. As noted above, on December 21, 2016, the Court granted the SEC's motion for summary judgment, and directed the parties to brief the appropriate remedies.

## DISCUSSION

The SEC seeks three forms of relief: a permanent injunction pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209(d) of the 40 Act, 15 U.S.C. § 80(b)-9(d), to prohibit Penn from any future violations of the securities laws, Mem. (Dkt. 178) at 4; disgorgement in the amount of $9,286,916.65, the alleged amount of Penn's ill-gotten gains, Mem. at 7; and civil monetary penalties, Mem. at 9.

1.  **Injunctive Relief**

"A permanent injunction is appropriate where there has been a violation of the federal securities laws and there is a reasonable likelihood of future violations." *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007). In determining whether to enter a permanent injunction, the Court considers four factors: "(1) the egregiousness of the violation; (2) the

3

degree of scienter; (3) the isolated or repeated nature of the violations; and (4) the sincerity of defendant's assurances against future violations." *SEC v. Elliott*, No. 09-CV-7594 (RJH), 2011 WL 3586454, at *10 (S.D.N.Y. Aug. 11, 2011) (quoting *Haligiannis*, 470 F. Supp. 2d at 389 n.9). Especially relevant is whether the defendant admits wrongdoing, because a defendant's refusal to do so makes "it rather dubious that [the defendant] [is] likely to avoid such violations of the securities laws in the future in the absence of an injunction." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1477 (2d Cir. 1996) (quoting *SEC v. Lorin*, 76 F.3d 458, 461 (2d Cir. 1996) (per curiam)).

Each factor weighs in favor of an injunction in this case. Penn's conduct was egregious. Together with a co-conspirator, he created a sham investigations company – complete with a fake website – which he used to divert approximately $9 million in investor funds. Op. at 3; Compl. (Dkt. 1) ¶ 44. When the Fund's auditors at Deloitte & Touche LLP ("Deloitte") raised questions about the payments, Penn provided them with fake work-product and ultimately fired Deloitte. Op. at 4; Compl. ¶¶ 5, 40-45. Penn's scheme involved a high degree of scienter. Penn admitted in state court that he "stole" more than $1 million from the Fund, Op. at 12, and his theft involved substantial planning and concealment. With respect to the third factor, Penn's scheme involved repeated misconduct. Over the course of three years, Penn submitted 32 false invoices, resulting in 80 improper transfers. *See SEC v. Zwick*, No. 03-CV-2742 (JGK), 2007 WL 831812, at *21 (S.D.N.Y. Mar. 16, 2007) (concluding that twenty fraudulent trades over a 16-month period qualified as systematic wrongdoing and citing similar cases). Finally, despite his state court guilty plea, Penn refuses to admit to this Court that what he did was wrong and he has expressed no remorse. *See SEC v. Contorinis*, 743 F.3d 296, 308 (2d Cir. 2014) ("We furthermore observe that Contorinis continues to deny having engaged in insider trading,

suggesting a lack of remorse and supporting further measures to deter future wrongdoing of a like type.") (internal citations omitted); Opp'n at 5 (characterizing the theft as "alleged"), 9-10 (arguing that Penn's conduct involved mere early payment of management fees).

The Court has considered Penn's argument that the collateral consequences of his conviction make it unlikely that he will be able to commit securities fraud in the future. *See SEC v. Johnson*, No. 03-CV-177 (JFK), 2006 WL 2053379, at *7 (S.D.N.Y. July 24, 2006) (recognizing that the adverse impact of a conviction is evidence that a defendant is unlikely to violate securities laws in the future). Even assuming that the notoriety and financial penalties associated with Penn's conviction make it less likely that he will be able to defraud investors in the future, Penn has not disavowed an intent to work in the securities industry in the future and, in any event, employment in finance and access to substantial capital are not prerequisites to securities fraud. *See SEC v. Payton*, No. 16-CV-4644 (JSR), 2016 WL 3023151, at *5 (S.D.N.Y. May 16, 2016). Moreover, despite admitting that he stole from the fund, Penn has appealed his state conviction. If Penn's conviction is reversed he may find it easier to re-enter the securities industry.

The SEC's motion for a permanent injunction is granted.

**2.     Disgorgement**

"Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." *First Jersey Sec. Inc.*, 101 F.3d at 1474. Disgorgement is intended to return the defendant to the status quo before his fraud, and it may not exceed the defendant's unlawful gains. *See Contorinis*, 743 F.3d at 301. A burden-shifting framework applies: the SEC is required to present "a reasonable approximation of the profits causally related to the fraud;" if it

does, then the burden shifts to the defendant to show that the SEC's approximation is not correct. *SEC v. Tourre*, 4 F. Supp. 3d 579, 589 (S.D.N.Y. 2014) (quoting *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013)).

The SEC has satisfied its initial burden of demonstrating the "approximate" value of Penn's unlawful gains. *See SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 330 (S.D.N.Y. 2007). The D'Avino Declaration details the illicit payments made by the Fund to Ssecurion. *See* D'Avino Decl. ¶¶ 10-13. According to the D'Avino Declaration – and not disputed by Penn – from October 2010 through July 2013, the Fund made 80 wire transfers to Ssecurion totaling $9,286,916.65. D'Avino Decl. ¶¶ 11-13. Entities controlled by Penn actually received $9,067,004 in stolen funds. Mem. at 2 n.2. There is no evidence that Ssecurion provided any legitimate services to the Fund.

Penn argues that any disgorgement award must be offset by the amount of restitution that he has paid, or will pay, to the Fund and its investors, and the value of his forfeited interest in the Fund. Penn is not required to disgorge amounts that he has already repaid.[2] Disgorgement is intended to force the defendant to give up the proceeds of his or her fraud – not to punish wrongdoing. *See SEC v. Palmisano*, 135 F.3d 860, 863 (2d Cir. 1998); *Contorinis*, 743 F.3d at 301. Although the SEC acknowledges this general point, it disputes Penn's valuation of his forfeited interest in the Fund. Reply Mem. at 7 & n.2. Relying on a valuation from July 2014, Penn argues that his forfeited interest in the Fund is worth between $18 and $20 million. *See* Opp'n at 4-6, Ex. 3. According to the SEC, Penn's valuation is unreliable and inaccurate: it is based on outdated information and overly optimistic projections of the Fund's performance; it does not account for expenses that are required to be deducted from the general partner's carried

---

[2] It is unclear whether Penn has paid any restitution to the Fund. To the extent he does so in the future, it is appropriate to offset these payments against his disgorgement obligation.

6

interest or for Penn's contractual obligation to forfeit half his interest in the Fund upon being removed for cause from the Fund's general partnership. *See* Reply Mem. at 7.

The parties' dispute over the value of Penn's forfeited interest in the Fund is a material dispute of fact. Notwithstanding the SEC's objections to Penn's methodology, it appears that the SEC does not dispute that Penn's carried interest in the Fund has some notional value that could offset his disgorgement obligation. But the SEC has not provided an alternative valuation – it is apparently content to point out the flaws in Penn's methodology without presenting evidence that would allow the Court to resolve the ultimate issue. Under the circumstances, an evidentiary hearing is necessary to resolve the factual question of the value of Penn's forfeited carried interest in the Fund. *See SEC v. Elliot*, 2011 WL 3586454, at *15 (concluding that there were material factual disputes relative to the defendant's scienter and denying the SEC judgment on penalties and disgorgement); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, No. 06-CV-2692 (KMW), 2008 WL 4443828, at *16 (S.D.N.Y. Sept. 29, 2008) (finding material factual disputes concerning the value of interest to be disgorged); *see also SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, 853 F. Supp. 2d 79, 86 (D.D.C. 2012) (denying judgment to the SEC because of material dispute as to whether funds were proceeds of wrongdoing). The SEC's motion for disgorgement is denied, pending an evidentiary hearing.[3]

**3.     Civil Monetary Penalties**

The Exchange Act and the 40 Act authorize the Court to impose a civil monetary penalty of up to the "gross amount of pecuniary gain to [the] defendant as a result of the violation [of the securities laws]" or a "tiered" penalty per violation. *See* 15 U.S.C. § 78u(d)(3). A "tier three"

---

[3]     To the extent the SEC is entitled to disgorgement, it is also entitled to prejudgment interest. Awarding prejudgment interest ensures that a defendant does not benefit from the time-value and use of the proceeds of his wrongdoing. *See Contorinis*, 743 F.3d at 308. For purposes of calculating prejudgment interest, the Court adopts as appropriate the Internal Revenue Service's underpayment rate. *See First Jersey Secs., Inc.*, 101 F.3d at 1476-77.

7

penalty of $150,000 or $160,000 per violation is authorized when, as is the case here, the violation involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and results in a "substantial loss[]" or a "significant risk" thereof. *See id.* at § 78u(d)(3)(B)(iii); Adjustments to Civil Monetary Penalty Amounts, Exchange Act Release No. 34-79749, Investment Advisers Act Release No. IA-4599, Investment Company Act Release No. IC-32414, 82 Fed. Reg. 5367-01, 5371-72 (Jan. 18, 2017) (to be codified at 17 C.F.R. pt. 201). To determine the appropriate penalty, the Court considers: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Haligiannis*, 470 F. Supp. 2d at 386.

The SEC's motion for civil penalties is denied, pending resolution of the parties' dispute over the proper amount of Penn's disgorgement obligation. Penn's conduct was egregious, involved a high degree of scienter, and was recurrent. But Penn has not provided the Court with any information regarding his current or expected financial condition. Penn's disgorgement obligation, if any, may also bear on his ability to pay a fine. Assuming, as appears likely, Penn has limited means, a reduced penalty may be appropriate. *See e.g.*, *Opulentica, LLC*, 479 F. Supp. 2d at 331-32 (assessing reduced penalty in light of defendant's disgorgement obligation and financial condition); *SEC v. Balboa*, No. 11-CV-8731 (PAC), 2015 WL 4092328, at *5 (S.D.N.Y. July 6, 2015) (same); *SEC v. Kapur*, No. 11-CV-8094 (PAE), 2012 WL 5964389, at *7 (S.D.N.Y. Nov. 29, 2012) (same). The parties will be directed to address Penn's financial status concurrently with his disgorgement obligation.

## CONCLUSION

The SEC's motion for a permanent injunction is GRANTED. The SEC's motions for disgorgement and for civil monetary penalties are DENIED, pending an evidentiary hearing on the value of Penn's forfeited interest in the Fund and Penn's financial status.

By **September 5, 2017**, the parties are directed to propose a schedule for an evidentiary hearing to resolve the parties' dispute over the value of Penn's forfeited property. The Court strongly encourages the parties to consider whether this issue may be resolved consensually without the need for a hearing. For instance, depending on the method by which carried interest is paid, it may be possible to craft a disgorgement order that provides for subsequent adjustments in Penn's disgorgement obligation based on the Fund's future realized profits on account of Penn's forfeited interest. The parties should also inform the Court of their respective positions on Penn's current and expected employment and financial status.

**SO ORDERED.**

Date: August 22, 2017
New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**