

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10281-1022

WRITER'S DIRECT DIAL LINE
(212) 336-0589

December 12, 2017

**BY ECF**

The Honorable Valerie E. Caproni
United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    <u>SEC v. Penn, et al., No. 14 Civ. 0581 (VEC)</u>

Dear Judge Caproni:

    We write with respect to the portion of the Court's Order of December 7, 2017 (Docket Entry 222) referencing the purported *pro se* status of Defendant Lawrence E. Penn, III ("Penn"), and its Order to attorney Ian Orr to explain his role in Penn's defense.

    Plaintiff Securities & Exchange Commission ("SEC") has been suspicious that, protestations to the contrary, Penn has been aided by counsel throughout this proceeding. Among other things, Mr. Orr has attended various meetings between the SEC and Penn when only issues related to Penn were being discussed. Yet, while Penn's various submissions have looked suspiciously like they have enjoyed the ministrations of counsel, Penn has continued to profess that he has been representing himself *pro se*. Indeed, at the November 2, 2017 prehearing conference in this matter, not only did Mr. Orr state, on the record, that he was not representing Penn but he confirmed that he was counsel only for Camelot Acquisitions Secondary Opportunities Management, LLC and The Camelot Group International, Inc. (together, the "Entities")[1] (November 2, 2017 hearing Transcript 22:9-11, 19-23). The Court then advised Penn of the following:

> THE COURT:
>
> If any attorney is providing you assistance that is not being disclosed, they are ethically obligated to disclose it. As a pro se litigant, you get certain benefits if you are represented by counsel you don't get. If you are truly pro se, that is fine. If you getting assistance, that needs to be disclosed. (*Id.* 23:4-9.)

    The evidence that has been developed since that November 2, 2017 prehearing conference continues to cast doubt on these representations to the Court.

---

[1] Mr. Orr filed a Notice of Appearance on behalf of the Entities on October 28, 2016 (Docket Entry 167). The Entities have not, since that time, been involved in *any* of the motion practice before this Court. Nonetheless, Mr. Orr has attended every Court conference and every meet and confer and telephone call with the SEC, despite the Entities not being involved in any of these proceedings the entire time Mr. Orr has represented them.

*First*, it has become apparent that, even though the Entities he represents have no stake in the evidentiary hearing regarding Penn's forfeited interests, Mr. Orr has been front and center in all respects to the retention of Penn's proposed experts: not only the identified-but-never-retained experts Paul Engel and T. Scott Vandervliet of Appraisal Economics, Inc. but also the expert disclosed on November 22, 2017, Mr. Woody Victor, Penn's proposed expert witness. Indeed, as Exhibit A reflects, the Victor Expert Witness Report was submitted to the SEC by "Ian D. Orr" listed as "Attorneys for Defendants." Exhibit A.

At Penn's deposition he testified that the retention agreement for Woody Victor was "between Mr. Orr and Mr. Victor." Transcript of November 28, 2017 Penn Deposition ("Penn Dep.") 171:5-10. (The pages of Penn's deposition referenced herein are attached as excerpts in the order to which they are referred herein, as Exhibit B). He also testified that in preparing for his deposition he went over the expert material that, he described, was "provided to Mr. Orr." Penn Dep. 25:3-21. He further stated, when asked how Victor became the designated expert, "My attorney reached out to him." In response to the follow-up question, "When you say my attorney, who are you referring to?" Penn responded "Mr. Orr." Penn Dep. 169:6-14. The following exchange also occurred:

> Q. Was there a formal retention letter?
> A. Yes, between Mr. Orr and Mr. Victor.
> Q. But that was signed on your behalf?
> A. As part of getting the valuation expert for this proceeding.

Penn Dep. 171:8-13.

Mr. Penn also testified that the $6,000 paid to Mr. Victor is coming "From Mr. Orr." Penn Dep. 171:14-18.

*Second*, it has also become clear that Mr. Orr has played a vital role in Penn's litigation of the issues to be determined at the January 19, 2018 evidentiary hearing. Penn testified that in preparing for his deposition, he "had conversations with his attorneys to what to do." When asked who those attorneys were, he identified, *inter alia*, Mr. Orr. Penn Dep. 22:13-23. He added that he also met with Mr. Orr before Thanksgiving as well. Penn Dep. 23:3-15.

Moreover, it was clear at the deposition that Mr. Orr was acting as Penn's advocate. Mr. Orr objected frequently and vociferously throughout, even though the interests of the clients he claimed to represent were not at stake. When the undersigned noted on the record that it was odd for Mr. Orr to be so strenuous in his objections for someone he claimed not to represent, and that it was "somewhat improper [since] he is not in fact representing him" Mr. Orr's response was telling: "I am representing." Penn Dep. 103:22 – 104:4.

Penn clearly treated Mr. Orr as his counsel. During one exchange, when Mr. Orr stated "I object you have asked and he answered the question" Penn stated "I agree with my attorneys' characterization of what's going on" and refused to answer the pending question. Penn Dep. 117:19 – 118:7.

*Third*, Mr. Orr has acted as Penn's counsel in connection with the SEC's discovery attempts on non-parties. When the SEC sought discovery from Paul Engel and Scott Vandervliet of Appraisal Economics Inc. (Penn's prior designated-but-never-retained- experts), they informed the SEC that they were forbidden from disclosing responsive documents originally obtained from Penn as they were advised that those materials were privileged. The person forbidding them from doing so was Mr. Orr, on behalf of Penn, who he described as "my client" in an email that was forwarded to the SEC. *See* Exhibit C.

*Fourth*, Mr. Orr's legal fees are being paid by Penn's mother. Penn Dep. 56:8-24. The only reason that Penn's family would be paying for Mr. Orr's representation is if, in actuality, Mr. Orr *is* representing Penn. That conclusion is bolstered by the fact that, as Penn admitted, he has met with Mr. Orr at least eight times, likely more. Penn Dep. 57:9 – 58:1. It would make no sense for Penn to meet that many times with respect to the Entities Mr. Orr has claimed to represent, given that nothing related to those Entities has been at issue during the entire time Mr. Orr has represented them.

We hope that this recitation of some additional factual background proves helpful to the Court. As a courtesy to Mr. Orr, we are filing this a day before his submission ordered by the Court in Docket Entry 222 is due, to provide him with sufficient opportunity to respond to the matters referenced above.

Respectfully submitted,

Howard A. Fischer
Senior Trial Counsel

cc:   Lawrence Penn (via ECF and email)
      Ian Orr, Esq. (via ECF and email)