UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE E. PENN, III,<br>et al.,<br><br>*Defendants*,<br><br>- AND -<br><br>A BIG HOUSE FILM AND<br>PHOTOGRAPHY STUDIO, LLC<br><br>*Relief Defendant*, | 14-CV-0581 (VEC)<br><br>ECF Case |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. Proc. 56, Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in support of its motion for summary judgment against Defendants Camelot Acquisitions Secondary Opportunities Management LLC ("CASO Management"), and Camelot Group International, LLC. ("CGI") (collectively, the "Camelot Entities"), based on the judgment already entered against Defendant Lawrence E. Penn, III ("Penn") and his criminal conviction and his admissions.

### PRELIMINARY STATEMENT

Based on his criminal conviction and his admissions, this Court has already found Penn liable for all charges but one, as set forth in further detail below. Based on this finding, and based on Penn's 99% ownership and control over the operations of CASO Management and CGI, the

SEC respectfully requests that summary judgment be entered against CASO Management and CGI.

## PRIOR PROCEEDINGS LEADING TO PENN'S LIABILITY

On January 31, 2014, the SEC filed its complaint in this action (the "Complaint") against Defendants Penn, CASO Management, CGI, Altura St. Michael Ewers and Ssecurion LLC and Relief Defendant A Bighouse Photography and Film Studio LLC (Statement of Material Facts ("SMF") ¶ 1; Fischer Decl. ¶ 3 Ex. A) (the "Civil Action").[1] CASO Management was a registered investment adviser through which Penn managed Camelot Acquisitions: Secondary Opportunities, L.P., a private equity fund (the "Fund"), along with its affiliate, CGI.[2]

Penn and CASO Management were charged with directly violating Section 10(b) of the Exchange Act [15.U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)], and CGI was charged with aiding and abetting such violations. (SMF ¶ 2; Fischer Decl. ¶ 4 Ex. A.) CASO Management and Penn were also charged with violations of Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 C.F.R. § 275.204.2]. (SMF ¶ 2; Fischer Decl. Ex. ¶ 4 Ex. A.)[3] As alleged in the Commission's Complaint, and later documented in declarations submitted to the Court in the Civil Action, between 2010 and 2013 Penn and his co-defendant, Altura St. Michael Ewers ("Ewers"), manufactured false invoices for purported due diligence services that were

---

[1] Factual citations are made to the relevant numbered paragraphs of the accompanying SMF. Each numbered paragraph in the SMF sets forth material facts not in dispute in accordance with Local Civil Rule 56.1, and, in turn, each paragraph of the SMF cites to the exhibits attached to the accompanying Declaration of Howard A. Fischer, dated January 19, 2018 ("Fischer Decl."). Capitalized terms not otherwise defined herein have the meanings ascribed to them in the SMF.

[2] CASO Management registered with the Commission as an investment adviser on September 14, 2012, and its registration was cancelled by the Commission on January 8, 2016. (SMF ¶ 10; Fischer Decl.¶ 11 and Ex. H.)

[3] Penn and CASO Management were also charged with violations of Section 207 of the Advisers Act [15 U.S.C. § 80b-7]; this charge remains unresolved. (SMF ¶ 12; Fischer Decl. ¶ 13 Ex. F.)

2

never provided to the Fund. (SMF ¶ 3; Fischer Decl. ¶ 5 Ex. A at ¶ 2.) The purported service provider, Ssecurion LLC ("Ssecurion"), an entity controlled by Ewers, received payments from the Fund in satisfaction of these fraudulent invoices. (*Id.*). Penn directed that most of the proceeds of the false invoices then be transferred to CASO Management and CGI, his wholly-controlled entities. (*Id.* at ¶ 3).

Criminal charges were later filed against Penn and Ewers in New York state court, alleging grand larceny, money laundering and falsifying business records. (SMF ¶ 4; Fischer Decl. ¶ 6 Ex. B.) In March 2015, Penn pled guilty, in New York Supreme Court, to one count of grand larceny in the first degree and one count of falsification of business records. Penn's conviction arose from his misappropriation, by submitting false invoices for purported due diligence services never actually provided, of over $9 million from a private equity fund he advised. (SMF ¶ 5; Fischer Decl. ¶ 7 Ex. C.) Evidencing the egregiousness of his conduct, the Court in the Criminal Case sentenced Penn to serve two to six years in prison and to pay restitution of $8,362,974. ((SMF ¶ 6; Fischer Decl. ¶ 7 Ex. D.)

On December 21, 2016, in this SEC case, the Court found that Penn violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder ("Rule 10b-5"), Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act"), and Section 204 of the Advisers Act and Rule 204-2 thereunder (collectively, the "Anti-Fraud Provisions"). (SMF ¶ 7; Fischer Decl. ¶ 8 Ex. E, Order granting Commission summary judgment ("SJ Order") at 12-15). On August 22, 2017, the Court enjoined Penn from further violations of the Anti-Fraud Provisions. (SMF ¶ 8; Fischer Decl. ¶ 9 Ex. F, Order imposing injunction ("Inj. Order") at 4-5). In a January 8, 2018 Order, this Court scheduled an

evidentiary hearing for April 16, 2018, to determine the amount of disgorgement and penalty to be assessed against Penn. (SMF ¶ 9; Fischer Decl. ¶ 10 Ex. G (the "January 8 Order").)

In finding Penn liable and enjoining him from further violations of the Anti-Fraud Provisions, the Court in this SEC case made the following relevant findings:

- That Penn pleaded guilty, in the Criminal Action, to having "stolen" money from the Fund. (Inj. Order at 4).

- Penn was acting as an investment adviser when he carried out his scheme to defraud the Fund. (SJ Order at 14).

- That Penn had "admitted that he diverted $9.3 million from the Fund to other entities under his control via Ssecurion and used that money to pay rent and salary expenses, and that those transfers/payments were not appropriately characterized in the books and records of the Fund." (SJ Order at 3-4 and n. 3, 9).

- That Penn "created a sham investigations company – complete with a fake website – which he used to divert approximately $9 million in investor funds." (Inj. Order at 4).

- That "[r]outing the money to CASO Management and CGI through Ssecurion served no legitimate purpose and was an obvious attempt to shield Penn's theft from the Fund's auditors and participants." (SJ Order at 11, citing cases holding that routing transactions through an intermediary is "inherently deceptive").

- That the scheme "involved substantial planning and concealment." (Inj. Order at 4).

- That Penn's illegal conduct was "repeated" because it included 80 improper transfers over three years. (Inj. Order at 4).

- That Penn "was acting as an investment adviser" when he engaged in this conduct. (Inj. Order at 14).

- That, when questioned by the auditors, Penn "provided them with fake work-product and ultimately fired" them. (Inj. Order at 4).

*See* SMF ¶ 11; Fischer Decl. ¶ 12 Exs. E and F. As the SEC did not move with respect to the claim under Section 207 of the Advisers Act [15 U.S.C. § 80b-7], that claim remains unresolved. *See* SJ Order at 16.

The Camelot Entities hired their own counsel (*see* June 28, 2016 Notice of Appearance, Docket Entry 143), and requested additional time to answer. [Docket Entry 144.] (SMF¶ 13; Fischer Decl. ¶ 14 Exs. I and J.) CASO and CGI ultimately submitted Answers on July 2, 2016. [Docket Entries 156 and 157.] (SMF¶ 14; Fischer Decl. ¶ 14 Exs. K and L.) On October 21, 2016 Ian Orr entered his Notice of Appearance on behalf of the Camelot Entities. [Docket Entry 167.] (SMF¶ 15; Fischer Decl. ¶ 14 Ex. M.) As the SEC has previously noted, although he claims to represent the Camelot Entities, Mr. Orr is being paid by Penn, has retained and paid for Penn's expert, and has acted repeatedly on behalf of Penn. *See, e.g.*, Docket Entries 226 and 230; *see also* Transcripts of November 2, 2017 and January 5, 2018 Prehearing Conferences. *See* SMF ¶ 16; Fischer Decl. ¶ 14 Exs. N and O.

## **LEGAL ARGUMENT**

It is well-established that a corporate entity that is controlled and owned by a defendant who is himself liable of securities fraud can also be found liable on that ground. This is predicated on the well-established principle that, because a corporate entity can only act through its agents, those acts done by the individual in her corporate capacity bind the entity as well, and can create liability for it.

Case law is unequivocal on this point. Because corporations can only act through their employees and agents, findings against those employees and agents are frequently held to justify the imputation of liability for securities fraud against the corporation. *See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001).

5

Consequently, courts in this Circuit and elsewhere have routinely held companies liable for securities laws violations in cases brought by the SEC based on the misconduct of those employees and agents, including on summary judgment motions. *SEC v. Kinnucan*, 9 F. Supp. 3d 370, 375 (S.D.N.Y. 2014) (granting summary judgment imputing liability to company for insider trading of president who plead guilty to obtaining and passing along material nonpublic information to his investor clients); *SEC v. Elliott*, 2012 WL 2161647 (S.D.N.Y. June 12, 2012)(KBF) ("As a matter of law, [owner of company's] state of mind is attributed to [the corporate defendant], an entity that he owned and controlled"); *SEC v. Tee to Green Golf Parks, Inc.*, 2011 U.S. Dist. LEXIS 4388, *24 (W.D.N.Y. 2011) (where individual pleaded guilty to mail fraud and conspiracy for a fraudulent scheme for sell promissory notes, his liability was imputed to his company, because he was the president and ran the company's day-to-day operations); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 381-82 (S.D.N.Y. 2007) (where president and COO of three investment funds pleaded guilty to securities fraud and investment advisor fraud for running a Ponzi scheme, his liability was imputed to company based on his "exclusive control over the management and operations" of the corporate defendant); *SEC v. Tome*, 638 F.Supp. 596, (S.D.N.Y. 1986) (corporation liable for securities fraud of its "responsible officers and authorized agents").[4]

The factual record is similarly beyond dispute that Penn owned, controlled, and managed both CASO Management and CGI. Penn owned approximately 99% of each of these entities. (SMF ¶¶ 17-18; Fischer Decl. ¶ 15 Ex. P, Penn's Answer in the Civil Action, dated April 8, 2016

---

[4] *See also SEC v. Stratocomm Corp.*, 2 F. Supp.3d 240, 259 (N.D.N.Y. 2014); *SEC v. Watermark Fin. Servs. Group, Inc.*, 2012 U.S. Dist. LEXIS 18436, *18 (W.D.N.Y. Feb. 14, 2012) (individual defendant's "knowledge and misconduct is imputed to the [corporation] because he was president and principal and ran the day-to-day operations); *SEC v. Graulich*, 2013 U.S. Dist. LEXIS 85751 (D.N.J. June 19, 2013) (individual who pleaded guilty to conspiracy to commit wire fraud for soliciting money from investors and using the money for his own personal use had his scienter imputed to the corporation he used to defraud investors, because he had complete control over it).

("Ans.") at Counterclaims ¶ 4; *see also id.*, ¶ 17: "Defendant admits that he had primary responsibility for all business decisions as Managing Member and Managing Director of Camelot Acquisitions Secondary Opportunities Management, LLC"). (*Id.* at ¶ 17). As Managing Member and Managing Director of the Fund's General Partner, Camelot Acquisitions Secondary Opportunities GP, LLC, Penn also had primary responsibility for all investment decisions made on behalf of Camelot Acquisitions Secondary Opportunities L.P. (the "Fund") (*Id.*)

Penn was also asked about CASO Management at his deposition, held on November 28, 2017, and he confirmed that he owned and controlled it. (Relevant pages from that deposition are referenced below, and are attached as Exhibit Q to the Fischer Declaration.)

11 Q. Do you see that? All right. Good.

12 Who are the parties to this agreement?

13 A. The GP, myself and the fund.

14 Q. And who else?

15 A. And those persons who have -- it says those

16 persons who have executed the agreement as limited

17 partners.

18 Q. And you are the owner of the GP?

19 A. Yes.

20 Q. And you control the GP?

21 A. Yes.

(SMF ¶ 20; Fischer Decl. Ex. Q at 97.)

He was also asked:

7 Q. Do you still control the entity defendants that

8 are the -- named in the caption of this litigation?

9 A. Yes. . . .

7

*Id.* at 55. (SMF ¶ 21.) *See also id.* at 85:15 – 86:9 (Penn conceding he executed state court criminal forfeiture in his capacity as "sole member and managing member of CASO Management); *id.* at 51:11-15 (Penn owned CASO Management).

Finally, it is clear that Penn violated the law through the Camelot entities, as he himself conceded. (SMF ¶ 22; Fischer Decl. ¶ 18. *See, e.g.*, Ans., ¶ 2 (Penn "admits diverting money from the fund" and "admits transferring money to CGI in a manner that did not characterize the use of the fund money appropriately"); ¶ 3 (Penn "admits that approximately all of the $9.3 million was sent from the Fund to CASO Management or CGI"); ¶ 4 (Penn admits the moneys diverted were "sent from the fund through CASO Management, and forwarded to CGI"); Second Affirmative Defense (Penn concedes "transferring money to CGI from late 2010 to October 2013."))

The facts and the law are clear. Penn's liability has been established, as has his exclusive control over the operations of CASO Management and CGI, and that he conducted parts of his fraud through these entities. Penn's liability is legally imputed to the Camelot Entities, and there is no obstacle to the immediate grant of summary judgment by the Court as to the charges asserted against them in the Complaint.

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant its application for summary judgment, against CASO Management and CGI. If the Court grants the SEC's motion, the SEC proposes that the appropriate remedies, including disgorgement, a civil penalty and permanent injunctions, be determined at the hearing scheduled on April 5, 2018.

Dated: January 19, 2018
      New York, New York

                                      SECURITIES AND EXCHANGE COMMISSION

By: _____
                                      Howard A. Fischer
                                      Katherine A. Bromberg
                                      Karen E. Willenken

                                      ATTORNEYS FOR PLAINTIFF
                                      Securities and Exchange Commission
                                      New York Regional Office
                                      Brookfield Place, 200 Vesey St., Rm. 400
                                      New York, New York 10281-1022
                                      (212) 336-0589 (Fischer)
                                      E-mail:  FischerH@SEC.gov