**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE**
**COMMISSION,**

                **Plaintiff,**

             **-against-**

**LAWRENCE E. PENN III,**
**ALTURA ST. MICHAEL EWERS,**
**CAMELOT ACQUISITIONS SECONDARY**
**OPPORTUNITIES MANAGEMENT, LLC,**
**THE CAMELOT GROUP INTERNATIONAL,**
**LLC, and**
**SSECURION LLC,**

              **Defendants,**

             **-and-**

**A BIGHOUSE FILM AND PHOTOGRAPHY**
**STUDIO LLC,**

            **Relief Defendant.**

**14 Civ. 0581 (VEC)**
**ECF Case**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**CERTAIN DEFENDANTS' MOTIONS TO VACATE OR AMEND**
**JUDGMENTS UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

Karen E. Willenken
Katherine S. Bromberg
Thomas P. Smith, Jr.
Securities and Exchange Commission
New York Regional Office
Brookfield Place, 200 Vesey St., Suite. 400
New York, New York 10281-1022
(212) 336-1100

February 18, 2022

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ...................................................................... 1

RELEVANT PROCEDURAL HISTORY ........................................................ 2

   I.   The SEC's Complaint............................................................................. 2

   II.  The Parallel New York State Criminal Case and the New York
       Courts' Rejection of Penn's *People v. Zinke* Arguments ...................... 3

   III. The Court's Grant of Summary Judgment and Remedies
       Against Penn and the Court's Denial of Penn's First Rule 60(b)
       Motion.................................................................................................... 4

   IV. Penn's Second Rule 60(b) Motion and Related Appeal......................... 6

   V.  The Pardon and Its Role in Penn's Pending Second Circuit
       Appeal.................................................................................................... 7

ARGUMENT ................................................................................................. 9

   I.   Penn's Motion Is Untimely. ................................................................. 11

   II.  Penn's Pardon Does Not Undermine the Court's Opinions or
       the Judgment Against Him. ................................................................. 12

       A.  Then-Governor Cuomo's Pardon Did Not Expunge Penn's
           Conviction. ................................................................................. 13

       B.  Penn's Admissions Independently Establish His Liability. ........ 14

   III. Penn Is Not Entitled to Relief Under Any Subsection of
       Rule 60(b). ........................................................................................... 15

       A.  There Was No Mistake Cognizable Under Rule 60(b)(1)........... 16

       B.  Rule 60(b)(5) Cannot Relieve Penn of an Unpaid Money
           Judgment, and the Injunction Remains Appropriate. ............... 17

       C.  The Pardon Does Not Present the "Extraordinary
           Circumstances" Necessary for Relief Under Rule 60(b)(6). ...... 18

CONCLUSION............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amica Mutual Ins. Co. v. Noel*, 16-cv-469 (JCH),
    2017 WL 2311857 (D. Conn. May 26, 2017) ...................................................... 11

*Bey v. Iaquinto*, 12-cv-5875 (JCF),
    2016 WL 462412 (S.D.N.Y. Feb. 4, 2016) .......................................................... 16

*Broadway v. City of New York*, 96-cv-2798 (RPP),
    2003 WL 21209635 (S.D.N.Y. May 21, 2003) ................................................... 10

*Chiulli v. Internal Revenue Serv.*, 03-cv-6670 (HBP),
    2006 WL 3008084, at *3 (S.D.N.Y. Oct. 20, 2006) ............................................ 11

*Empresa Cubana Del Tabaco v. General Cigar Co. Inc.*,
    385 Fed. App'x 29 (2d Cir. 2010) (summary order) ............................................ 19

*Hirschberg v. CFTC*,
    414 F.3d 679 (7th Cir. 2005) ............................................................................... 13

*In re North*,
    62 F.3d 1434 (D.C. Cir. 1994) ............................................................................. 13

*Kemp v. United States*,
    142 S. Ct. 752 (Jan. 10, 2022) ............................................................................. 16

*Klapprott v. United States*,
    335 U.S. 601 (1949) ............................................................................................. 19

*Knote v. United States*,
    95 U.S. 149 (1877) ............................................................................................... 13

*Kokesh v. SEC*,
    581 U.S. ___, 137 S. Ct. 1635 (2017) ................................................................. 17

*Leonard v. Lowe's Home Ctrs., Inc.*, 00-cv-9585 (RWS),
    2002 WL 548745 (S.D.N.Y. Apr. 12, 2002) ...................................................... 10

*Liu v. SEC*,
    591 U.S. ___, 140 S. Ct. 1936 (2020) ............................................................. 6, 17

*Maldonado v. Local 803 I.B. of T. Health & Welfare Fund*,
    490 Fed. Appx. 405 (2d Cir. 2013) (summary order) .......................................... 10

*Marrero Pichardo v. Ashcroft,*
    374 F.3d 46 (2d Cir. 2004) ..................................................................... 19

*Nemaizer v. Baker,*
    793 F.2d 58 (2d Cir.1986) ...................................................................... 18

*People ex rel. Prisament v. Brophy,*
    38 N.E.2d 468 (N.Y. 1941) ..................................................................... 14

*People v. Tiger,*
    32 N.Y.3d 91 (2018) ............................................................................... 15

*People v. Zinke,* 76 N.Y.2d 8 (1990) ................................................... passim

*PRC Harris, Inc. v. Boeing Co.,*
    700 F.2d 894 (2d Cir. 1983) ................................................................... 11

*Radack v. Norwegian Am. Line Agency, Inc.,*
    318 F.2d 538 (2d Cir. 1963) ................................................................... 19

*Roberts v. State,*
    54 N.E. 678 (N.Y. 1899) ......................................................................... 13

*Saunders v. Goord,* 98-cv-8501 (JGK),
    2007 WL 1434974 (S.D.N.Y. May 15, 2007) ........................................ 17

*SEC v. Amerindo Inv. Advisors Inc.,* 15-cv-5231 (RJS),
    2017 WL 3017504 (S.D.N.Y. July 14, 2017) ........................................ 17

*SEC v. Durante,*
    641 F. App'x 73 (2d Cir. 2016) (summary order) ................................. 11

*SEC v. Lewis,*
    423 F.Supp.2d 337 (S.D.N.Y. 2006) ..................................................... 18

*United States v. Baus,*
    834 F.2d 1114 (1st Cir. 1987) ................................................................ 19

*Yapp v. Excel Corp.,*
    186 F.3d 1222 (10th Cir. 1999) .............................................................. 16

*Zerman v. Jacobs,*
    751 F.2d 82 (2d Cir. 1984) ..................................................................... 10

**Statutes**

New York Exec. Law § 19 (Consol. 2021) ................................................. 14

**Rules**

Federal Rules of Appellate Procedure:

Rule 4(a)(4) ........................................................................................ 9

Federal Rules of Civil Procedure:

Rule 60(b)................................................................................... 1, 9, 10

Rule 60(b)(1) ............................................................................... 16, 18

Rule 60(b)(5) ............................................................................... 11, 17

Rule 60(b)(6) ......................................................................... 11, 18, 19

Rule 60(c)(1) ...................................................................................... 11

Rule 62.1 ............................................................................................. 9

**Docket Citations**

Complaint, Docket No. 1............................................................................ 2, 3

Plaintiff's Motion, Filed July 1, 2016, for Judgment on the Pleadings or
    Partial Summary Judgment Against Defendant Lawrence E. Penn
    III, Docket No. 149 ............................................................................ 4

Third Amended Answer, Filed April 8, 2016, of Defendant Lawrence E.
    Penn III, Docket No. 134................................................................ 2, 4, 5

Exhibits to Declaration of Karen E. Willenken Dated July 1, 2016,
    Docket No. 151

    Transcript of Hearing Held December 18, 2014 for Altura Ewers
        (Ex. F) ........................................................................................ 3

    Transcript of Hearing Held March 16, 2015 for Lawrence E. Penn
        III (Ex. G) ............................................................................... 3, 5

Memorandum of Law of Defendant Lawrence E. Penn III Opposing
    Plaintiff's Motion for Judgment on the Pleadings or Summary
    Judgment, Dated August 15, 2016, Docket No. 161 ............................... 4

Decision and Order Dated December 21, 2016, Granting Summary
  Judgment Against Defendant Lawrence E. Penn, Docket No. 168,
  reported as *SEC v. Penn*, 225 F. Supp. 3d 225 (S.D.N.Y. 2016)....................1, 3, 5

Decision and Order Dated August 22, 2017 Granting Non-Monetary
  Relief Against Defendant Lawrence E. Penn, Docket No. 198..........................1, 3

Order, Dated September 14, 2018, Imposing Disgorgement and Civil
  Penalties on Defendant Lawrence E. Penn III, Docket No. 297 .........................12

Motion of Defendant Lawrence E. Penn III, Dated October 10, 2018,
  Under Rule 60(b) to Set Aside the Final Judgment, Docket No. 301....................5

Memorandum of Law, Filed October 9, 2018, in Support of Motion for
  Relief From Final Judgment by Defendant Lawrence E. Penn III,
  Docket No. 303...................................................................................................6

Order Dated January 3, 2019 Denying Post-Judgment Motions of
  Defendant Lawrence E. Penn III, Docket No. 309....................................6, 12, 15

Exhibits to Declaration of Karen E. Willenken Dated September 25,
  2020, Docket No. 391:

  Mandate of the Second Circuit Court of Appeals, Issued October 4,
    2019 (Ex. K)..................................................................................................6

  Partial Docket Sheet for Second Circuit Appeal No. 18-03602 (Ex. I).................6

Opinion and Order, Dated March 31, 2021, Denying Rule 60(b) Relief,
  Docket No. 396...................................................................................................9

Amended Final Judgment Against Defendant Lawrence E. Penn III,
  Docket No. 410..............................................................................................1, 7

Notice of Appeal of Defendant Lawrence E. Penn III, Filed May 25,
  2021, From Denial of Rule 60(b) Motion, Order Granting Turnover
  of Assets, and Amended Judgment, Docket No. 413.............................................7

Motion, Filed January 27, 2022, of Defendant Lawrence E. Penn III
  to Vacate, Alter or Amend Judgment Pursuant to Rule 60(b),
  Docket No. 425...................................................................................................9

Exhibits to Affidavit of Lawrence E. Penn III Dated January 27, 2022,
    Docket No. 426:

    Decision of the New York State Supreme Court, Dated June 10,
        2016, Denying Penn's Motion to Vacate (Ex. D) .................................................. 4

    Decision of the New York New York Appellate Division, Dated
        September 26, 2017, Affirming Conviction of Lawrence E. Penn
        III (Ex F), reported as *People v. Penn*, 60 N.Y.S.3d 664 (Mem.)
        (App. Div. 1st Dep't Sept. 26, 2017) .................................................................. 4

    Decision of the New York Court of Appeals, Dated January 31,
        2018, Denying Leave to Appeal (Ex. G),
        reported as *People v. Penn*, 77 N.Y.S.3d 6 (2018) .............................................. 4

    Decision of the New York Court of Appeals, Dated May 30, 2018,
        Denying Reconsideration of Denial of Leave to Appeal (Ex. H),
        reported as *People v. Penn*, 79 N.Y.S.3d 107 (2018) .......................................... 4

    Pardon Issued by the Governor of New York on August 23, 2021
        (Ex. J) ................................................................................................................. 7

Brief of Defendant Lawrence E. Penn III, Filed January 27, 2022,
    in Support of Rule 60(b) Motion for Relief From Order,
    Docket No. 427 ....................................................................................... 2, 12, 18, 19

Exhibits to Declaration of Karen E. Willenken Dated January 27,
    2022, Docket No. 429:

    Internet article from Spectrum News (Ex. A) ...................................................... 19

    Brief on Appeal to Second Circuit, Filed October 8, 2021 by
        Lawrence E. Penn III (Excerpt, Ex. B) ............................................................... 8

    Twitter Post by Former Governor Andrew Cuomo
        Dated August 23, 2021 (Ex. C) .......................................................................... 8

    Brief in Opposition to Second Circuit Appeal, Filed January 6, 2022
        by the Securities and Exchange Commission (Excerpt, Ex. D) ......................... 8

    Reply Brief of Lawrence E. Penn III, filed January 27, 2022 in
        Second Circuit Appeal (Excerpt, Ex. E) ............................................................. 9

Plaintiff Securities and Exchange Commission (the "SEC") respectfully submits this memorandum of law in opposition to the Rule 60(b) motion (the "Motion," Docket No. 425) by Defendant Lawrence E. Penn III ("Penn") for relief from the Court's orders dated December 21, 2016 (Docket No. 168) and August 22, 2017 (Docket No. 198) and/or the amended Final Judgment entered against him on April 14, 2021 (Docket No. 410). For the reasons described below and in the accompanying Declaration of Karen Willenken ("Willenken Decl.", Docket No. 429), the Motion should be denied.

## PRELIMINARY STATEMENT

Penn pled guilty in New York state court to charges of grand larceny and falsification of business records in March 2015. In doing so, he admitted that he had "stolen" money and falsified business records. The conduct to which he pled guilty involved misappropriation of approximately $9.3 million from a private equity fund. Penn subsequently filed, in this proceeding, an Answer to the Complaint in which he admitted to having "'sent' $9.3 million from the fund to two Penn-controlled entities . . . through Ssecurion" LLC ("Ssecurion"), and that he had mischaracterized the use of fund money.

On December 22, 2016, this Court granted summary judgment in favor of the Commission in this civil action based on the same facts. (Docket No. 168). The Court's summary judgment relied on the facts established by the criminal conviction, as evidenced by Penn's admissions in his allocution, as well as on Penn's admissions in the Answer in this case. (*Id*. at 8-9). Penn has repeatedly argued, in

this Court and in the New York appellate courts, that his criminal conviction for grand larceny was legally impossible because he was the general partner of the private equity fund from which he stole. *See People v. Zinke,* 76 N.Y.2d 8 (1990). That argument has been rejected on both procedural and substantive grounds.

The only new information in Penn's latest motion is a gubernatorial pardon issued by Andrew Cuomo on August 23, 2021, his last day in office. That pardon, however, says nothing more than that the governor found Penn to be a "fit object of mercy." It does not negate the fact of Penn's conviction nor, more importantly, the admissions he made in his plea to the criminal charges and in his Answer. Penn's motion should be denied.

Not only does Penn's Motion lack substantive merit, but, as discussed below, it is untimely because it was filed more than five months after the issuance of the pardon.

## RELEVANT PROCEDURAL HISTORY

### I.    The SEC's Complaint

The SEC filed its Complaint on January 30, 2014. (Docket No. 1.)[1] The Complaint alleges that Penn engaged in a scheme to misappropriate almost $9.3 million (of the approximately $120 million of committed capital raised) from Camelot Acquisitions: Secondary Opportunities, L.P. (the "Fund"), a private equity

---

[1]    Throughout this memorandum, "Br." refers to Penn's brief in support of his Motion (Docket No. 426), and the "Amended Answer" refers to Penn's Answer, filed April 8, 2016 (Docket No. 134), to the Complaint. Otherwise, when citing to documents filed in this action on ECF, this memorandum cites only to the ECF docket number for brevity, unless otherwise unclear.

fund he founded and advised. (Docket No. 1 ¶¶ 1, 2, 17, 24.) As the Complaint further alleges, Penn directed the money to Defendant Ssecurion, an entity owned and controlled by Penn's friend, Defendant Altura S. Ewers ("Ewers"). (*Id.* ¶¶ 29, 32.) Penn and Ewers created invoices for fabricated "due diligence" services and falsely recorded the payments in the Fund's books and records as due diligence expenses. (*Id.* ¶¶ 28-30.) After receiving the money, Ssecurion transferred most of it, either directly or indirectly through Relief Defendant A Bighouse Film and Photography Studio LLC, to one of two Penn-controlled entities: Defendants Camelot Acquisitions Secondary Opportunities Management, LLC, the registered investment adviser to the Fund, and Camelot Group International, LLC, an affiliated entity. (*Id.* ¶¶ 16, 20, 37-39.)

## II.    The Parallel New York State Criminal Case and the New York Courts' Rejection of Penn's *People v. Zinke* Arguments

At approximately the same time the Commission filed its Complaint, a New York grand jury indicted Penn and Ewers for grand larceny, money laundering, and falsifying business records based on the same conduct the Complaint alleges. (Docket No. 168 at 2.) Ewers and Penn pled guilty to most of the charges. (*See* Docket Nos. 151-6, 151-7 (plea transcripts).) The New York State Supreme Court sentenced Penn to two years in prison, which he served. (Docket No. 198 at 2.)

Penn later argued that he could not have been guilty of larceny because the New York Court of Appeals, in *People v. Zinke*, 76 N.Y.2d 8 (1990), held that a partner in a partnership does not commit larceny when he takes property owned by the partnership. In denying his motions, the New York State Supreme Court held

3

that Penn's reliance on the case was "misplaced" where he "did not serve as a partner, either general or limited, of the fund at the time of the theft." *See* Ex. D. to Affidavit of Lawrence E. Penn III dated January 27, 2022 ("Penn Aff."), Docket No. 426-4, at 2.

Penn appealed, and the New York Appellate Division affirmed the judgment. *People v. Penn*, 60 N.Y.S.3d 664 (2017) (Ex. F to Penn Aff., Docket No. 426-6.) The Appellate Division concluded that "it would have been unavailing for counsel to litigate the issue of whether defendant was an owner of the stolen property," because "defendant adopted a form of business organization whereby he held no ownership interest in the stolen money at the time of the theft." *Id.* at 3. The New York Court of Appeals declined to hear Penn's case and later declined to reconsider that decision. *People v. Penn*, 77 N.Y.S.3d 6 (2018); 79 N.Y.S.3d 107 (2018) (Exs. G & H to Penn Aff., Docket Nos. 426-7 & 8.)

## III.   The Court's Grant of Summary Judgment and Remedies Against Penn and the Court's Denial of Penn's First Rule 60(b) Motion

On April 8, 2016 Penn filed his Amended Answer, in which he admitted many of the Complaint's allegations, while arguing that, because of the *Zinke* rule, he should never have been charged with grand larceny. (Docket No. 134.)

On July 1, 2016, the SEC moved for judgment on the pleadings or for partial summary judgment against Penn based on collateral estoppel. (Docket No. 149.) Penn opposed the motion, arguing, among other things, that the Court should not grant summary judgment based on collateral estoppel from the criminal plea,

because the *Zinke* rule rendered Penn's indictment improper. (Docket No. 161 at 9–12.)

On December 22, 2016, the Court granted the SEC's motion for summary judgment against Penn. (Docket No. 168.) In doing so, the Court catalogued the admissions Penn had made in his plea allocution, as well as in his amended Answer in this proceeding. The Court noted that in Penn's plea allocution, he admitted that he had "made a false entry in a schedule of invoices in the Fund's business records 'with the intent to defraud, including an intent to commit another crime[.]'" *Id.* at 231, citing Penn's plea allocution (Docket No. 151-7). The Court also noted Penn's admission that he had "stolen" in excess of $1 million from the Fund. *Id.* The Court further noted that in his Amended Answer, Penn admitted that he had "'sent' $9.3 million from the Fund to two Penn-controlled entities . . . through Ssecurion," and that he had mischaracterized the use of Fund money. *Id.*, citing Amended Answer at ¶ 2-3, 3d Aff. Def.

The Court granted the SEC's motion for summary judgment based on Penn's admissions in the plea allocution from his New York guilty plea and on his admissions in the Amended Answer. While the Court recognized that the fact of Penn's criminal conviction also could preclude relitigation of other issues "necessarily determined by the conviction," it took a conservative approach, considering only those facts that Penn specifically admitted during his plea allocution. *Id.* at 234 & n. 6.

On October 2, 2018, the Court entered the initial Final Judgment against Penn. (Docket No. 300.) A week later, Penn moved for reconsideration or to vacate the Final Judgment under Rule 60(b). (Docket No. 301.) He argued that the Court should not have granted summary judgment because his conviction for grand larceny was inconsistent with *Zinke* and collateral estoppel therefore had been appropriate. (*See* Docket No. 303 (memo of law).) On December 3, 2018, Penn filed a notice of appeal.

On January 3, 2019, while Penn's appeal of the October 2018 Final Judgment was pending, the Court denied Penn's first motion for reconsideration or to vacate the Final Judgment. (Docket No. 309.) The Court held that even if the New York courts had made a "mistake" by ignoring the *Zinke* rule, this Court could not "second-guess the state high court's interpretation of state law." *Id*. at 2. The Court also observed that "Penn's admissions in this case, standing alone, are sufficient to establish his liability." *Id*. at 3. Penn did not appeal the Court's decision, but he provided notice of it to the Second Circuit in his then-pending appeal. *See* Docket No. 391-9 (partial docket sheet for Appeal 18-03602). The Second Circuit ultimately dismissed Penn's appeal of the initial Final Judgment without opinion, stating that the appeal lacked "an arguable basis either in law or in fact." *See* Docket No. 391-11 (Second Circuit Mandate).

## IV.  Penn's Second Rule 60(b) Motion and Related Appeal

On August 18, 2020, Penn filed a second motion to vacate under Rule 60(b). (Docket No. 384). Although this motion ostensibly was based on the Supreme Court's decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020), it sought to relitigate many of

the same issues that Penn had raised in his Amended Answer and in his first motion to vacate. On March 31, 2021, this Court rejected Penn's second motion to vacate. (Docket No. 396.)

In the process of briefing the second motion to vacate, the SEC staff realized that the calculation of prejudgment interest it had presented to the Court in connection with the entry of judgment against Penn in 2018 had improperly included interest on frozen funds. An amended Final Judgment, which was based on a corrected calculation of prejudgment interest, was entered on April 14, 2021. (Docket No. 410.)

On May 25, 2021, Penn filed a notice of appeal for both the denial of his Rule 60(b) motion and the amended judgment. (Docket No. 413.)

## V.    The Pardon and Its Role in Penn's Pending Second Circuit Appeal

On August 23, 2021, Governor Andrew Cuomo pardoned Penn. The pardon stated in relevant part:

> WHEREAS, at Court held in and for the County of New York,
>
> **LAWRENCE E. PENN III a/k/a LAWRENCE E. PENN**
>
> was convicted on March 16, 2015 of the crime of Grand Larceny in the First Degree, and Falsify Business Records in the First Degree and was sentenced to two to six years of incarceration and an unspecified amount of restitution, and the said LAWRENCE E. PENN III A/K/A LAWRENCE E. PENN having been represented unto me as a fit object of mercy;
>
> THEREFORE, KNOW YE, that by these presents, I do fully and unconditionally pardon, remise and release the said LAWRENCE E. PENN III A/K/A LAWRENCE E. PENN of and from the offense whereof he stands convicted as aforesaid, and of and from all sentences, judgments and executions thereon, including offering relief from removal.

7

Docket No. 426-10, Ex. J to Affidavit of Lawrence Penn filed January 27, 2022.

Penn's moving papers provide no information about the process by which this pardon was obtained, such as the arguments he or his counsel made to the governor when seeking the pardon or the evidence they provided.

More than a month after receiving the pardon, Penn filed his opening brief in his pending appeal to the Second Circuit. His brief mentioned the fact that Penn had received a "full and unconditional pardon on August 23, 2021," suggesting that judicial notice be taken of this event. (Willenken Decl. Ex. B at 4 and n. 5.) His brief referenced a Twitter post from then-Governor Cuomo about the pardons issued that day. (*Id*.) That Twitter post included the following information concerning Penn's pardon:

> Lawrence Penn, 51, pled guilty to first-degree Falsifying Business Records in 2015, and was incarcerated for two years. A West Point graduate and a veteran, Mr. Penn continues to be active in his community, and a full pardon will allow him to fully re-engage in a meaningful way with society.

(Willenken Decl. ¶¶ 6-7 & Ex. C.) Nothing in this statement suggested that the pardon had been based on a determination that Penn had been innocent of grand larceny; in fact, this statement did not mention the grand larceny charge at all.

On January 6, 2022, the SEC filed its brief opposing Penn's appeal. (Willenken Decl. ¶ 8 & Ex. D.) That brief cited federal and state case law— discussed below—for the proposition that the pardon did not affect Penn's liability. It also cited to the decisions of this Court for the proposition that Penn's liability had been determined based on his admissions, and not solely on the fact of his conviction for a related crime.

On January 27, 2022—the same day he filed the instant motion in this Court—Penn filed his reply brief in the pending Second Circuit appeal. In the brief, he continued to argue that he had been pardoned "based on overwhelming and convincing proof of innocence." (Willenken Decl. ¶ 9 & Ex. E at 1, 4.) He characterized the disgorgement and penalties ordered in this proceeding as "for alleged conduct that even if committed, was forbidden to criminalize." (*Id*. at 16.)

Penn's current motion under Rule 60(b) at times seems to challenge only the Court's opinions on summary judgment and remedies, rather than the amended Final Judgment. For example, in his Notice of Motion (Docket No. 425), the text states that "Defendant respectfully moves pursuant to…Rule 60(b) for Relief from Memorandum Opinion and Order dated December 21, 2016 Docket #168 and #168 and Relief from Memorandum Opinion and Order dated August 22, 2017 Docket #198….") and does not mention the Final Judgment. But the title of the same document is "Notice of 60(b) Motion for Relief from Judgment and Order." Because Penn contests at least some of the remedies imposed by the Final Judgment, however, the SEC assumes that Penn also seeks relief from the Final Judgment.[2]

## ARGUMENT

Rule 60(b) allows a court, in its discretion, to relieve a party from a final judgment against it for any of six reasons: (1) "mistake, inadvertence, surprise, or

---

[2]    It is unclear, given that Penn's appeal is pending, whether the Court has jurisdiction to grant the Motion. *See* Rule 4(a)(4) of the Federal Rules of Appellate Procedure. Pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, however, the Court may deny the motion even if it lacks jurisdiction to grant it. *See* Rule 62.1 of the Federal Rules of Civil Procedure.

excusable neglect"; (2) "newly discovered evidence"; (3) "fraud . . .

misrepresentation, or misconduct by an opposing party"; (4) "the judgment is void";

(5) "the judgment has been satisfied . . . [or] it is based on an earlier judgment that

has been reversed or vacated"; or (6) "any other reason that justifies relief." Fed. R.

Civ. P. 60(b). "*Pro se* litigants are not excused from producing 'highly convincing'

evidence in support of motions to vacate a final judgment." *Leonard v. Lowe's Home

Ctrs., Inc.*, 00-cv-9585 (RWS), 2002 WL 548745, at *3 (S.D.N.Y. Apr. 12, 2002)

(citations omitted); *see also Broadway v. City of New York*, 96-cv-2798 (RPP), 2003

WL 21209635, at *3 (S.D.N.Y. May 21, 2003) ("[T]he heavy burden for securing

relief from final judgments applies to *pro se* litigants as well as to those who are

represented by counsel.").

     "A Rule 60(b) motion is properly denied where it seeks only to relitigate

issues already decided." *Maldonado v. Local 803 I.B. of T. Health & Welfare Fund*,

490 Fed. Appx. 405, 406 (2d Cir. 2013) (summary order) (*citing Zerman v. Jacobs*,

751 F.2d 82, 85 (2d Cir. 1984)). None of Penn's arguments are new; although he

presents a new fact—that he has been pardoned for the crime to which he pled

guilty in a parallel criminal proceeding—he does not and cannot demonstrate that

this fact undermines the legitimacy of this Court's decisions or the Final Judgment

against him, which were based on Penn's admissions in this proceeding and in his

plea allocution. His motion certainly does not present the type of exceptional

circumstances that would warrant relief from judgment.

## I.    Penn's Motion Is Untimely.

Motions under subsections (1) through (5) generally must be made within a reasonable time and no more than one year after the date of judgment. Fed. R. Civ. P. 60(c)(1). One year is the outer limit; what is reasonable depends on the facts and circumstances of the particular case. *See Chiulli v. Internal Revenue Serv.*, 03-cv-6670 (HBP), 2006 WL 3008084, at *3 (S.D.N.Y. Oct. 20, 2006); *SEC v. Durante*, 641 F. App'x 73, 78 (2d Cir. 2016) (summary order) (motion for relief from disgorgement under Rules 60(b)(5) and (6) denied on timeliness grounds). In considering whether a Rule 60(b)(6) motion was filed within a "reasonable time," a court "must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983) (citing cases). Previous delays and bad faith behavior by the movant may be relevant to this analysis. *See Amica Mutual Ins. Co. v. Noel*, 16-cv-469 (JCH), 2017 WL 2311857, at *1 (D. Conn. May 26, 2017) (finding delay of one month after judgment unreasonable where the "'particular circumstances of the case' involve[d] frequent, unexcused delays" and failure to appear at a hearing).

Penn filed this Motion more than five months after the pardon was issued, and more than three months after he mentioned the pardon in his brief to the Second Circuit addressing his appeal.

Penn has offered no reason for not filing his Motion sooner. Given the Court's previous findings that Penn has repeatedly delayed this litigation and that his sole occupation since his release from prison has been litigating with the SEC and others concerning his conduct relevant to this case and his tax liability, filing more

than five months after his pardon was issued does not constitute filing within a "reasonable time." (*See* Docket No. 297 at 5–6 n.4 ("Penn's late-in-the-game requests for an adjournment appear calculated to delay these proceedings as long as possible."), 12 n.13 (Penn has "spent his time embroiled in litigation and arbitration (including this case) against the victims of his fraud and taking a correspondence course in becoming a paralegal. . . ."); Docket No. 309 ("[T]he timing of the motion [to disqualify] indicates that Mr. Penn is attempting to exploit judicial processes in an effort to delay what he expects to be an adverse judgment against entities that he controls.").)

## II.    Penn's Pardon Does Not Undermine the Court's Opinions or the Judgment Against Him.

Penn's pardon signifies nothing more than that he somehow convinced the then-Governor of the state of New York—the head of its executive branch—that he should be relieved from any further punishment based on his criminal conviction. The pardon does not establish his innocence, notwithstanding Penn's assertion, offered without citation to any evidence or legal authority, that his pardon was "based on overwhelming and convincing proof of evidence." (Br. at 1, 2 and 3.) But even if Penn's pardon did expunge his conviction, the pardon would not warrant relief from the judgment in this federal civil proceeding against him, because Penn has never presented a meaningful challenge in any forum to the *facts* underlying this Court's judgment, which were established by Penn's own admissions. Those admissions establish that he violated the federal statutes at issue in this proceeding.

12

## A.    Then-Governor Cuomo's Pardon Did Not Expunge Penn's Conviction.

As a general matter, a "pardon in no way reverses the legal conclusion of the courts; it 'does not blot out guilt or expunge a judgment of conviction." *Hirschberg v. CFTC*, 414 F.3d 679, 682 (7th Cir. 2005) (quoting *In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994) (per curiam)).[3]

While Penn vaguely suggests (in the second heading of his Preliminary Statement) that this principle applies only to a "federal" pardon by the President of the United States, and not to a gubernatorial pardon by the Governor of New York, he offers no support for this proposition.

In reality, in New York, a gubernatorial pardon typically "proceeds, not upon the theory of innocence, but implies guilt." *Roberts v. State*, 54 N.E. 678 (N.Y. 1899). In the *Roberts* case, as here, the pardon showed "upon its face that it was granted as an act of mercy, and not as one of justice." The court observed that it was "upon the representation that the appellant was a *fit subject for mercy* that [the pardon] was obtained, and not upon the ground that the judgment was unjust or invalid." (Emphasis added.) Although Penn argues that his pardon was an "act of clemency based on overwhelming and convincing proof of innocence," he offers no evidence other than the pardon itself, which says nothing about innocence, but does state

---

[3]    In addition, a pardon is "an act of grace by which an offender is released from the consequences of his offence, so far as such release is practicable and within control of the pardoning power, or of officers under its direction." *Knote v. United States*, 95 U.S. 149, 153 (1877). The Governor of New York does not control the New York judiciary, let alone the federal courts.

that Penn had been "represented unto [the former Governor] as a *fit object of mercy*." (Emphasis added).

Similarly, in *People ex rel. Prisament v. Brophy*, 38 N.E.2d 468, 469 (N.Y. 1941), the New York Court of Appeals noted that "the judgment of guilt is, as a matter of law, conclusive upon the executive as well as upon all others except where a statute provides otherwise."

A New York statute does provide for expungement of certain criminal convictions, but Penn offers no evidence that he has sought this relief in the appropriate forum, and any such effort on his part would be futile. The statute provides that a judgment of conviction may be expunged upon motion by the defendant in the court of conviction, but only after receiving "a pardon from the governor stating that such pardon is issued on the ground of innocence of the crime for which he was convicted and further stating that such finding of innocence is based upon evidence discovered after the judgment of conviction was rendered." New York Exec. Law § 19 (Consol. 2021). Were Penn to move the court in which he was convicted, pursuant to this statute, to expunge his conviction, his motion would be denied because his pardon does not state that it was "issued on the ground of innocence," based upon "evidence discovered after the judgment of conviction was rendered." In the absence of such a motion, decided in Penn's favor by the New York court that sentenced him, Penn remains a convicted felon.

## B.    Penn's Admissions Independently Establish His Liability.

Even if Penn's criminal conviction had been expunged, that fact would not undermine the basis for the Court's previous orders, in which it found that Penn

engaged in securities fraud, determined the appropriate remedies, and entered judgment against him. None of these decisions was based on the single fact of Penn's criminal conviction. On the contrary, as the Court observed when ruling on Penn's first motion to vacate the judgment against him, "Penn's admissions in this case, standing alone, are sufficient to establish his liability." (Order Dated January 1, 2019, Denying Post-Judgment Motions of

Defendant Lawrence E. Penn III, Docket No. 309 at 3.)

Under New York law, "a valid guilty plea relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty. Stated otherwise, a voluntarily guilty plea is inconsistent with a claim of factual innocence." *People v. Tiger*, 32 N.Y.3d 91, 101 (2018). Accordingly, in the unlikely event that Penn could convince the court in which he was sentenced to expunge his conviction, Penn would remain bound by the admissions from his guilty plea that this Court considered when it granted summary judgment against him.

## III.    Penn Is Not Entitled to Relief Under Any Subsection of Rule 60(b).

As discussed above, Penn's untimely Motion offers no real argument for relief of any kind, because it offers no evidence that he was pardoned based on actual innocence, and because his guilt or innocence of the state law crime of grand larceny is irrelevant to whether he engaged in the conduct to which he has admitted in this federal action for violations of the securities laws. Even if Penn's pardon did establish that he was innocent of the criminal charges against him, however, and even if this Court's reliance on his criminal conviction were not adequately

15

confirmed by his admissions in his Answer, his situation still would not qualify for relief under Rule 60(b).

### A.    There Was No Mistake Cognizable Under Rule 60(b)(1).

"Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake . . . or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Bey v. Iaquinto*, 12-cv-5875 (JCF), 2016 WL 462412 (S.D.N.Y. Feb. 4, 2016), at *4, *quoting Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999).[4]

Penn mentions "mistake" in his moving brief at pages 9-10, but he does not explain what mistake he or this Court has made. Certainly, this Court did not err in failing to consider a pardon that had not yet been issued at the time it granted summary judgment and entered judgment against Penn for his violations of the securities laws. To the extent that Penn means to argue that former Governor Cuomo's pardon proves this Court incorrectly rejected Penn's arguments about the legitimacy of his criminal conviction, the argument lacks either factual support or logic. Penn has offered no evidence that the former Governor in fact pardoned him based on actual innocence. But even if the pardon had been based on a conclusion that the *Zinke* rule rendered Penn's criminal conviction improper, that would in no

---

[4]    The Supreme Court has granted certiorari to address whether Rule 60(b)(1) authorizes relief based on a district court's error of law.  *See Kemp v. United States*, 142 S. Ct. 752 (Jan. 10, 2022) (certiorari grant); Petition for Certiorari, *Kemp v. United States*, 2021 WL 6338386, at *i (Sept. 16, 2021) (question presented). However the Supreme Court resolves that issue, relief is not warranted here.

way prove that this Court had made any mistake. This Court appropriately declined to consider Penn's motions that collaterally attacked his criminal conviction.[5] In short, nothing in Penn's moving papers suggests any mistake by this Court.

### B. Rule 60(b)(5) Cannot Relieve Penn of an Unpaid Money Judgment, and the Injunction Remains Appropriate.

Rule 60(b)(5) permits relief from a judgment only where it "has been satisfied, released, or discharged"—which Penn's Final Judgment has not been—or where it is no "longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). A money judgment, however, does not have "prospective application." *Saunders v. Goord*, 98-cv-8501 (JGK), 2007 WL 1434974, at *2 (S.D.N.Y. May 15, 2007)*; see also SEC v. Amerindo Inv. Advisors Inc.*, 15-cv-5231 (RJS), 2017 WL 3017504, at *8 (S.D.N.Y. July 14, 2017) (denying relief under Rule 60(b)(5) after the Supreme Court decision in *Kokesh v. SEC,* S. Ct. 1635 (2017) ).

The exact nature of the relief sought by Penn's motion is unclear. At page 6, he seems to quote from a brief filed in his pending appeal of this Court's rejection of his Rule 60(b) motion based on *Liu*, stating that "this Court should reverse this decision and remand this case to the district court" for further litigation of the "amounts of ill-gotten gains that accrued to the benefit of Defendant Penn in light of

---

[5]    Even if this Court's rulings *had* involved a rejection of Penn's *Zinke* arguments, and even if then Governor Cuomo had found the *Zinke* arguments valid, that would prove nothing more than a difference of opinion between the Executive and Judicial branches of New York government. Penn's attempt to appeal his conviction on that basis was rejected by the New York courts, with the Appellate Division noting that his *Zinke* arguments failed because Penn was not actually the general partner of the Fund.

the conviction in conflict in law." (Br. at 6.) To the extent that Penn's motion contests the amount of his unsatisfied disgorgement obligation, Rule 60(b)(5) provides no avenue for relief.

To the extent that Penn's motion is generously read to seek to modify the injunction against him, Rule 60(b)(5) could provide relief if Penn could show that it was "no longer equitable." In *SEC v. Lewis*, for example, a district court's injunction against further violations was lifted after the defendant received a presidential pardon. 423 F.Supp.2d 337 (S.D.N.Y. 2006). In that case, however, the court acknowledged that the pardon alone would not have been sufficient to justify lifting the injunction, and that the "passage of some twenty years" since the defendant committed his crime was "not to be ignored." *Id*. at 341. Here, although Penn has not been charged with any further misconduct in the eight years since his criminal conviction, he has spent the entire period engaged in frivolous litigation and has steadfastly refused to take responsibility for his misconduct. Nothing that has occurred over the past eight years, including his pardon, suggests that the injunction is unwarranted or against the public interest.

### C. The Pardon Does Not Present the "Extraordinary Circumstances" Necessary for Relief Under Rule 60(b)(6).

Rule 60(b)(6) permits the Court to vacate its judgment for "any other reason that justifies relief." Rule 60(b)(6) provides a mechanism to vacate or amend a judgment only upon a showing of "extraordinary circumstances justifying relief." *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir.1986). The burden of proof is on the party seeking relief from the judgment. *See Marrero Pichardo v. Ashcroft*, 374 F.3d

46, 55 (2d Cir. 2004). Motions for relief from judgments under Rule 60(b)(6) are

generally disfavored in the Second Circuit. *See, e.g., Empresa Cubana Del Tabaco v.*

*General Cigar Co. Inc.*, 385 Fed. App'x. 29, 30 (2d Cir. 2010) (summary order) (citing

*Pichardo*, 374 F.3d at 55).

Penn emphasizes the "extraordinary" nature of his pardon, asserting that it

is "one of the only pardons issued by the Governor of New York in 100 years" (Br. at

12). While it is by definition true that Penn's pardon is one of the "only" ones

granted in any given time period, news reports suggest that Governor Cuomo

granted 67,000 pardons while he was in office. *See* Willenken Decl. at ¶ 4 & Ex. A.

Even assuming that the pardon is nevertheless "extraordinary," Penn has not

demonstrated that his "extraordinary circumstances" *justify relief* from the Final

Judgment against him. Because Rule 60(b)(6) is designed to allow the district court

to exercise its discretion to achieve equity, no set of rigid standards defines the

types of "extraordinary circumstances" that justify relief, but past cases granting

relief have involved factors, such as illness, poverty, lack of notice, or

misrepresentations by the Government, that prevented a litigant from having a fair

opportunity to litigate or to contest a judgment that was entered. *See, e.g., Klapprott*

*v. United States*, 335 U.S. 601, 615 (1949) (naturalized US citizen was unable to

contest cancellation of his citizenship due to illness and incarceration); *Radack v.*

*Norwegian Am. Line Agency, Inc.*, 318 F.2d 538 (2d Cir. 1963) (court clerk failed to

send notice of dismissal); *United States v. Baus*, 834 F.2d 1114 (1st Cir. 1987)

(judgment contained significant error, but party delayed seeking relief from

judgment based on repeated assurances from the Government that the judgment was not final). None of these factors is present here, and Penn has offered no compelling argument that his pardon, even if it had been based on actual innocence, rendered the judgment against him inequitable.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.


Dated: February 18, 2022
     New York, New York

_____

Karen E. Willenken
Katherine S. Bromberg
Thomas P. Smith, Jr.
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0140 (Willenken)

20