USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/03/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff*,

v.

LAWRENCE E. PENN, III, MICHAEL ST. ALTURA
EWERS, CAMELOT ACQUISITIONS SECONDARY
OPPORTUNITIES MANAGEMENT LLC, THE
CAMELOT GROUP INTERNATIONAL, LLC, and
SSECURION LLC,

*Defendants*,

- AND -

A BIGHOUSE PHOTOGRAPHY AND FILM STUDIO
LLC,

*Relief Defendant.*

14-CV-581 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Defendant Lawrence Penn, proceeding *pro se*, has filed a third motion for reconsideration

pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, seeking relief from two Court

orders and from the final judgment entered against him.[1]  For the following reasons, Penn's

motion is DENIED.

---

[1]      Penn's motion seeks relief from the Court's December 21, 2016, Opinion and Order (Dkt. 168) and from
the Court's August 22, 2017, Opinion and Order (Dkt. 198).  *See* Not. of Mot., Dkt. 425 at 1.  Although not
expressly mentioned, the Court presumes that Penn is also seeking relief from the Final Judgment that was entered
against him.  *See* Orig. Judgment, Dkt. 300; Amend. Judgment, Dkt. 410.

## BACKGROUND

The Court assumes familiarity with the Court's prior opinions issued over the course of this eight-year litigation.[2]  Below is a summary of the facts most pertinent to the pending motion, taken from the Court's opinion denying Penn's second motion for reconsideration:

> From 2007 to February 2014, Penn managed a registered private equity fund called Camelot Acquisitions Secondary Opportunities LP or the "Fund."  *Penn Remedies I*, 14-CV-581, 2017 WL 5515855, at *1 (S.D.N.Y. Aug. 22, 2017).  In early 2014, the Fund's auditors discovered that Penn had misappropriated approximately $9.3 million from the Fund.  Penn and an accomplice had used Ssecurion, LLC, a shell corporation, to send the Fund invoices for "due diligence" services that it had not performed; the Fund paid the invoices.  Ssecurion forwarded most of the proceeds it received to . . . other entities controlled by Penn.  *Id.*  On March 16, 2015, Penn pled guilty in New York state court to one count of grand larceny and one count of falsifying business records.  *Id.*
>
> In 2014, the SEC commenced this parallel civil enforcement action against Penn, [two of the entities he controlled], and others.  Compl., Dkt. 1. . . .  On December 21, 2016, the Court granted the SEC's motion for summary judgment on its claims that Penn violated Section 10(b) and Rule 10b-5 of the Exchange Act and Sections 204 and 206 and Rule 204-2 of the Investment Advisers Act.  *Penn Liability*, 225 F. Supp. 3d 225, 230 (S.D.N.Y. 2016).  As discussed at length in the Court's opinion, Penn admitted, as part of his allocution in his criminal case and in his answer in this case, to stealing millions of dollars from the Fund, including by mischaracterizing expenses and diverting funds to entities that he controlled.  *Id.* at 231.  Penn also directly conceded violations of Section 204 of the 40 Act and Rule 204–2 thereunder.  *Id.*
>
> Moving to remedies, on August 22, 2017, the Court granted the SEC's motion to permanently enjoin Penn from further violations of the securities laws, *Penn Remedies I*, 2017 WL 5515855, at *1, and on September 14, 2018, the Court ordered disgorgement in the amount of $9,286,916.65, plus interest, and a monetary civil penalty in the same amount, *Penn Remedies II*, No. 14-CV-581, 2018 WL 4378444, at *3, *7 (S.D.N.Y. Sept. 14, 2018).  On October 1, 2018, the

---

[2]    *See Sec. & Exch. Comm'n v. Penn*, 225 F. Supp. 3d 225 (S.D.N.Y. 2016) ("*Penn Liability*"); *Sec. & Exch. Comm'n v. Penn*, No. 14-CV-581, 2017 WL 5515855 (S.D.N.Y. Aug. 22, 2017) ("*Penn Remedies I*"); *Sec. & Exch. Comm'n v. Penn*, No. 14-CV-581, 2018 WL 4378444 (S.D.N.Y. Sept. 14, 2018) ("*Penn Remedies II*"); *Sec. & Exch. Comm'n v. Penn*, No. 14-CV-581, Dkt. 309 (S.D.N.Y. Jan. 3, 2019) ("*Penn First Rule 60(b) Motion*"); *Sec. & Exch. Comm'n v. Penn*, No. 14-CV-581, Dkt. 319 (S.D.N.Y. June 14, 2019) ("*Order on Motion to Disqualify*"); *Sec. & Exch. Comm'n v. Penn*, No. 14-CV-581, 2020 WL 1272285 (S.D.N.Y. Mar. 17, 2020) ("*Entity Defs. Liability & Remedies*"); *Sec. & Exch. Comm'n v. Penn*, No. 14-CV-581, 2021 WL 1226978 (S.D.N.Y. Mar. 31, 2021) ("*Penn Second Rule 60(b) Motion*").

> Court entered a final judgment against Penn.  Judgment, Dkt. 300.[3]  The U.S.
> Court of Appeals for the Second Circuit summarily dismissed Penn's appeal.  *See*
> Mandate, Dkt. 334 ("Upon due consideration, it is hereby ordered that the appeal
> is dismissed because it lacks an arguable basis either in law or in fact.") (cleaned
> up).

*See Penn Second Rule 60(b) Motion*, No. 14-CV-581, 2021 WL 1226978, at *1–2 (S.D.N.Y.

Mar. 31, 2021) (footnotes omitted).

On March 31, 2021, the Court denied Penn's second motion for reconsideration.  *Id.*  In

that motion, Penn argued that the portions of the judgment that ordered disgorgement conflicted

with a June 2020 Supreme Court decision, *Liu v. Securities & Exchange Commission*, 140 S. Ct.

1936 (2020), which had been decided after the original judgment was entered against him.  *See*

*generally* Mem. of Law, Dkt. 385.  But, like the motion currently before the Court, Penn did not

limit his arguments to the purported basis for his motion; for the umpteenth time, Penn repeated

his long-rejected argument that, despite his guilty plea, he is innocent of the criminal charges for

which he was convicted.  *Penn Second Rule 60(b) Motion*, 2021 WL 1226978, at *3, *15

(discussing Penn's "return[] to the arguments he has made throughout this litigation" and again

rejecting those arguments).  Penn's appeal of the Court's decision denying that motion, *see* Not.

of Appeal, Dkt. 414, remains pending before the Second Circuit.[4]

On August 23, 2021, then-New York Governor Andrew Cuomo pardoned Penn of his

state conviction for grand larceny and falsifying business records.  Pardon, Dkt. 426-10.  The

---

[3]     The October 1, 2018, judgment includes pre-judgment interest in the amount of $1,878,064.28.  *See*
Judgment, Dkt. 300 at 4.  The SEC later informed the Court that the pre-judgment interest amount was incorrect
because the SEC had failed to account for the fact that pre-judgment interest does not accrue on funds from the time
they are frozen.  *See* SEC Turnover Mem. of Law, Dkt. 351 at 3 n.1.  On April 14, 2021, the Court entered an
amended judgment, reducing the amount of prejudgment interest to $1,875,414.15 to account for that error.  *See*
Amend. Judgment, Dkt. 410 at 4.

[4]     Given the pending appeal, the Court may not have subject-matter jurisdiction to grant Penn's current
motion for reconsideration.  *See* Fed. R. App. P. 4(a)(4).  Because the Court is denying Penn's motion, which it has
the authority to do pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, the Court declines to consider
whether it would have jurisdiction to grant the motion.

pardon itself is devoid of any explanation for its issuance, beyond stating that Penn had been

"represented" to the Governor "as a fit object of mercy."  *Id.*  Five months later, Penn moved for

reconsideration of the Court's prior opinions and judgment, contending that the pardon, based on

"overwhelming and convincing proof of innocence," warrants extraordinary relief under Rule

60(b).  Mem. of Law, Dkt. 427.  The SEC opposes.  Resp., Dkt. 430.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 60(b), the Court may grant relief from a final

judgment in six circumstances, three of which have been raised here: "(1) mistake, inadvertence,

surprise, or excusable neglect; . . . (5) the judgment has been satisfied, released, or discharged; it

is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is

no longer equitable; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).

Regardless of which provision a party invokes, Rule 60(b) requires courts to "strike[] a

balance between serving the ends of justice and preserving the finality of judgments."  *Nemaizer*

*v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (collecting cases).  To strike this balance, Rule 60(b)

motions "should be broadly construed to do substantial justice, yet final judgments should not be

lightly reopened."  *Id.* (cleaned up).  Accordingly, Rule 60(b) is "a mechanism for extraordinary

judicial relief invoked only if the moving party demonstrates exceptional circumstances."

*Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (cleaned up); *see also Miles v.*

*N.Y.C. Transit Auth.*, 802 F. App'x 658, 659 (2d Cir. 2020).  The decision whether to grant such

relief is "committed to the sound discretion of the district court."  *Shanfa Li v. Chinatown Take-*

*Out Inc.*, 812 F. App'x 49, 53 (2d Cir. 2020) (internal citation omitted); *Nemaizer*, 793 F.2d at

61.

Additionally, Penn, as a *pro se* party, is afforded "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  District courts must read a *pro se* litigant's "pleadings liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (cleaned up).  Courts "are less demanding of [*pro se*] litigants generally," *see Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014), but this lower standard "does not exempt a party from compliance with relevant rules of procedural and substantive law," *see Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal citation omitted).

## DISCUSSION

### I.    To the Extent the Motion for Reconsideration Is Based on Rule 60(b)(1) or 60(b)(5), the Motion Is Denied

Penn claims to have brought his motion for reconsideration pursuant to Rules 60(b)(5) and 60(b)(6) of the Federal Rules of Civil Procedure.  *See* Mem. of Law, Dkt. 427 at 1; Reply, Dkt. 431 at 1.  But in his brief in support of his motion, *see* Mem. of Law, Dkt. 427 at 9–10, Penn also invokes Rule 60(b)(1), which allows a court to relieve a party from a final judgment or order in the case of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Although Penn implies that the Court has made some sort of mistake in its past orders, he does not specify the alleged mistake.  Because the purported basis of his motion for reconsideration is the gubernatorial pardon, which was granted after the Court entered the orders that Penn is challenging, any argument that the Court mistakenly failed to consider the pardon is nonsensical.  Accordingly, to the extent that Penn's motion relies on Rule 60(b)(1), the motion is denied.

Penn relies explicitly on Rule 60(b)(5), *see* Mem. of Law, Dkt. 427 at 1, which allows for relief if "the judgment has been satisfied, released, or discharged; it is based on an earlier

judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). But *all* of Penn's arguments under Rule 60(b)(5) are word-for-word identical to those he made in his second motion for reconsideration, and each of those arguments was considered and rejected by the Court. *Compare* Mem. of Law, Dkt. 427 at 10, 14 (discussing Rule 60(b)(5)); Reply, Dkt 431 at 9–10 (same) *with* Mem. of Law, Dkt. 385 at 10–11, 14 (including the same discussion verbatim). As stated in the Court's prior opinion:

> Penn owes over $20 million dollars pursuant to a valid judgment against him, *see* Dkt. 300 [and Dkt. 410], and no one has asserted that the judgment has been paid. Accordingly, the judgment has not been satisfied, released, or discharged. The judgment against Penn is not based on an earlier judgment that has been reversed or vacated, and Penn's appeal of the judgment was unsuccessful, *see* Dkt. 334, so the second scenario does not apply. The final possibility, that applying the judgment prospectively is no longer equitable, is inapplicable to money judgments such as this one. *See DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2d Cir. 1994) (holding that judgments involving injunctions may have prospective applications while money judgments do not).

*See Penn Second Rule 60(b) Motion*, 2021 WL 1226978, at *3 n.7. Penn does not address — or even reference — the Court's prior decision rejecting the exact arguments he has made here. With nothing new to go on and for the same reasons provided in the Court's previous decision, to the extent that Penn relies on Rule 60(b)(5), his motion is denied.

## II.     The Motion for Reconsideration Is Denied Pursuant to Rule 60(b)(6)

Rule 60(b)(6) is a catchall provision that applies when there is "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Motions pursuant to Rule 60(b)(6) may only be brought if no other subsection is applicable. *See PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 898 (2d Cir. 1983) ("Rule 60(b)(6) is a broadly drafted 'umbrella provision,' which must be read in conjunction with the other sections of that Rule, and is applicable only where the more specific provisions do not apply.") (collecting cases); *accord Nemaizer*, 793 F.2d at 63 (same); *Jackson v. Stanford*, No. 16-CV-9702, 2020 WL 6822984 at *4 (S.D.N.Y. Nov. 20, 2020)

6

(same).  Penn argues that his gubernatorial pardon justifies relief under Rule 60(b)(6).  The Court disagrees.

### A.  Penn's Pardon Does Not Provide a Basis to Grant the Motion for Reconsideration

In 2016, the Court found Penn liable for violations of Section 10(b) and Rule 10b–5 of the Securities Exchange Act (prohibiting, in connection with the purchase or sale of a security, manipulative or deceptive acts in furtherance of a scheme to defraud); Sections 206(1) and 206(2) of the Investment Advisers Act (prohibiting investment advisers from using a scheme to defraud clients, among other acts); and Section 204 and Rule 204-2 of the Investment Advisers Act (requiring investment advisers to maintain accurate books and records).  *See generally Penn Liability*, 225 F. Supp. 3d 225 (S.D.N.Y. 2016).  The Court's liability determination was based on its careful and conservative review of Penn's admissions during his guilty plea allocution in New York state court and in his amended answer filed in this lawsuit.  *Id.* at 231–32, 233–38.

Liberally construing Penn's motion for reconsideration, he appears to be arguing that his gubernatorial pardon, which he contends was based on "overwhelming and convincing proof of innocence," Mem. of Law, Dkt. 427 at 1, negates his own prior admissions during his guilty plea allocution in state court and in his amended answer in this case.  The Court disagrees.

### 1.  Penn Has Not Provided Any Evidence that His Pardon Was Based on "Overwhelming and Convincing Proof of Innocence"

As an initial matter, Penn's underlying assumption that his pardon reflects his innocence — a contention he states repeatedly in his submissions — is not substantiated.  Despite the repetition, *see* Mem. of Law, Dkt 427 at 1, 6, 12, 15, 18; Reply, Dkt. 431 at 2, 15, Penn cites *no* authority to support his proposition.  The only information the Court has about the pardon is the language of the pardon itself and then-Governor Cuomo's tweet announcing the pardon.  The

pardon itself does not state the reason for its issuance; it states only that Governor Cuomo granted the pardon after Penn was represented to him "as a fit object of mercy." Pardon, Dkt. 426-10. At least one New York statute contemplates gubernatorial pardons that expressly state that they were granted on grounds of innocence. *See* N.Y. Exec. Law § 19 (2003) (requiring New York courts to set aside a judgment of conviction in cases where the defendant "shall receive a pardon from the governor stating that such pardon is issued on the ground of innocence of the crime for which he was convicted and further stating that such finding of innocence is based upon evidence discovered after the judgment of conviction"). Penn's pardon is devoid of any reference to his innocence.

Additionally, both parties reference Cuomo's tweet announcing the acts of clemency he granted the day before he resigned from office. *See* Resp., Dkt. 430 at 8; Reply, Dkt. 431 at 1 n.1. The tweet itself announces the commutations of five people as well as Penn's pardon. It states in relevant part, "I am granting clemency to 6 people. These individuals have shown remorse, rehabilitation and commitment to their communities." Andrew Cuomo (@NYGovCuomo), Twitter (Aug. 23, 2021, 7:40 P.M.), https://twitter.com/NYGovCuomo/status/1429951747582271489. The inclusion of "remorse and rehabilitation" does not suggest that the acts of clemency were granted on the basis of innocence; instead, such language suggests that Cuomo found that, given the post-conviction behavior of the individuals at issue, they were entitled to clemency.

Cuomo attached information to his tweet about the six individuals to whom he granted clemency. With respect to Penn, the attachment stated in full: "Lawrence Penn, 51, pled guilty to first-degree Falsifying Business Records in 2015, and was incarcerated for two years. A West Point graduate and veteran, Mr. Penn continues to be active in his community, and a full pardon

will allow him to fully re-engage in a meaningful way with society."[5]  *Id.*  Nothing in those two

sentences suggests that Cuomo pardoned Penn based on a finding of innocence.

Although Penn does not cite any authority to support his argument that his pardon was

based on "overwhelming and convincing proof of innocence," the Court assumes that Penn is

relying on the State of New York Guidelines for Review of Executive Clemency Applications.

*See* New York State Exec. Chamber, *New York State Guidelines for Review of Executive*

*Clemency Applications* (June 2019),

https://doccs.ny.gov/system/files/documents/2019/06/GRECA.pdf.  With respect to pardons, the

Guidelines state that "[a] pardon is *most commonly* available: (1) to permit a judgment of

conviction to be set aside where there is overwhelming and convincing proof of innocence not

available at the time of conviction; (2) to relieve a disability imposed upon a judgment of

conviction for an offense; or (3) to prevent deportation from or to permit re-entry into the United

States."  *Id.* at 1 (emphasis added).  The Guidelines also state that "clemency is a matter within

the sole discretion of the Governor."  *Id.*  Penn has provided no information from which the

Court could infer that the Governor granted the pardon because Penn was in the first category,

especially as the Guidelines contemplate other reasons (beyond the most common ones) pursuant

to which a Governor may grant a pardon.[6]  Cuomo, in his sole discretion, could have granted the

pardon for any number of reasons; Penn has provided no evidence that innocence was a

consideration — let alone the basis — behind the former-Governor's decision.

---

[5]      It is unclear why Cuomo's tweet failed to mention that Penn had also been convicted of Grand Larceny in
the first degree.

[6]      The Court seriously doubts that Penn falls within the first category.  If Penn had "overwhelming and
convincing proof of innocence not available at the time of conviction" — which would need to be evidence other
than legal arguments repeatedly rejected by New York courts — the Court is confident that Penn would have
referenced such evidence in his motion for reconsideration.  But instead of taking such an approach, Penn chose not
to include any information about the contents of his pardon application to the Governor.

    **2.** **Even If Penn Had Provided Evidence that His Pardon Was Granted Based on the Governor's Determination that He Was Innocent, the Court Would Still Deny His Motion for Reconsideration**

Even if Penn had persuaded the Court that Cuomo granted his pardon based on overwhelming and convincing proof of innocence, that would still not provide a basis for the Court to grant his motion for reconsideration. Penn does not cite any authority to support the proposition that a pardon — even one based on innocence — somehow expunges the admissions the pardoned person made during a guilty plea allocution or somehow prevents a federal court from relying on those admissions in determining that the person violated the federal securities laws. And even if such authority existed, it could in no way render void the admissions Penn made in his amended answer in this litigation — admissions that provided a separate basis for the Court's finding of liability. Accordingly, even if the pardon somehow indicated that Cuomo had determined that Penn was innocent of the state law crimes to which he pled guilty, that in no way calls into question this Court's independent finding that Penn violated various federal securities laws.

    **B. Penn's Remaining Arguments Are Again Denied**

The vast majority of Penn's arguments do not concern the legal import of the gubernatorial pardon; instead, most of his legal briefs recite verbatim arguments Penn has made, and the Court has rejected, over and over again in this litigation. Those arguments include that Penn's larceny conviction in New York state court is invalid pursuant to *People v. Zinke*, 556 N.Y.S.2d 11 (1990); that he has been denied a hearing on the merits before New York courts in violation of his due process rights; that it was unlawful for this Court to rely on his invalid criminal conviction; that a 2018 affidavit from a member of the Fund's advisory board shows that it was impossible for him to have committed larceny; and that the $9.3 million was not

10

misappropriated because it was part of committed capital designated for investments and

expenses in line with the Fund's agreements and associated documents.  *See* Mem. of Law, Dkt.

427 at 8–9, 12–14, 15, 18–20; Reply, Dkt. 431 at 3, 4–5, 7, 14, 15, 16.

Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving

party demonstrates exceptional circumstances."  *Ruotolo*, 514 F.3d at 191 (cleaned up).  There is

nothing exceptional about setting forth the same arguments that have been rejected by the Court

on numerous occasions.  *See also Maldonado v. Loc. 803 I.B. of T. Health & Welfare Fund*, 490

F. App'x 405, 406 (2d Cir. 2013) ("A Rule 60(b) motion is properly denied where it seeks only

to relitigate issues already decided.").  Accordingly, to the extent that Penn's motion for

reconsideration is premised on arguments that he has previously raised and that have previously

been rejected by the Court, the motion is denied.[7]

### CONCLUSION

For the foregoing reasons Penn's motion for reconsideration is DENIED.

The Clerk of Court is respectfully directed to terminate the open motion at docket entry

425.

**SO ORDERED.**

Date:  **June 3, 2022**
       **New York, NY**                          _____
                                                  **VALERIE CAPRONI**
                                                  **United States District Judge**

---

[7] Those same arguments are also precluded under the law of the case.  "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise."  *Hernandez v. Sessions*, 731 F. App'x 51, 55 (2d Cir. 2018) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)).  Penn has not presented a cogent or compelling reason for the Court to reopen this case to determine yet again that he is liable for violating federal securities laws.  *See Penn Second Rule 60(b) Motion*, 2021 WL 1226978, at *11 (citing the law of the case doctrine in refusing to re-consider Penn's arguments previously rejected by the Court).